Dan H. MORRIS, M.D., Petitioner.

v.

Lynn GOODWIN, Respondent.

No. 06SC558.

Supreme Court of Colorado,
En Banc.

May 27, 2008.

Rehearing Denied June 23, 2008.

Andrew M. Low, Dale R. Harris, Rudy E. Verner, Davis Graham & Stubbs LLP, Denver, CO, for Petitioner.

Paul M. Mahoney, Kevin S. Mahoney, The Mahoney Law Firm, P.C., Denver, CO, for Respondent.

Justice RICE delivered the Opinion of the Court.

This case presents a question of statutory interpretation as to how a trial court should calculate interest on a personal injury damages award under section 13–21–101, C.R.S. (2007), when the damages awarded by the jury exceeds the Colorado Health Care Availability Act's ("the HCAA") statutory cap on noneconomic damages.[1] *See* § 13–64–302(1)(b), C.R.S. (2007) (capping noneconomic damages at $250,000). The court of appeals held that a court must calculate interest on the total award assessed by the jury, even when that amount was later reduced due to the statutory cap on noneconomic damages. *Goodwin v. Morris,* 159 P.3d 669, 672 (Colo. App.2006). We reverse that decision, holding that a trial court should calculate interest on the amount of the final judgment, regardless of the jury's determination.

## I.  Facts and Procedural History

This appeal is the result of a wrongful death action arising out of a medical malpractice case. Respondent Lynn Goodwin argues that her husband, Jack Duksin, died as a result of receiving negligent care from petitioner Dr. Dan H. Morris, a family physician.[2] In March 1995, Duksin fractured his thumb while skiing, and he was slated for surgery to repair his thumb. His orthopedic surgeon ordered routine chest x-rays because there was a possibility that he would need a general anesthetic for the thumb surgery. The x-rays revealed an abnormal density in Duksin's lung, and the orthopedic surgeon recommended that Duksin see a primary care physician. Duksin saw Dr. Morris, a board-certified specialist in family practice, on March 30, 1995.

According to the complaint, Dr. Morris evaluated the x-rays and performed a physical examination, and ultimately told Duksin that he had a "clean bill of health." However, Dr. Morris testified that he told Duksin that there was a possibility that he had cancer, and he says he admonished Duksin to receive another x-ray in four to six weeks to follow up. According to Dr. Morris, Duksin reassured him that he would pursue the issue, but that he planned to do so with a different doctor in another area. Duksin never sought additional medical advice or treatment.

In May 1998, Duksin began to have pains in his chest, spine, flank, and back. In August of that year, he was diagnosed with primary cancer of the lung and metastatic cancer of the spine, pelvis, leg, liver, and brain, traceable to the primary cancer of the lung. He filed a lawsuit in October 1998, and died in November 1998.

After a six-day trial, a jury found that both Dr. Morris and Duksin had been negligent, and it determined that Dr. Morris was eighty-eight percent at fault, while Duksin was twelve percent at fault. It found that economic damages were $1,883,500 ($383,500 of which was for past damages, and $1,500,000 of which was for future losses). It awarded noneconomic damages of $1,116,500 (including $116,500 in past losses and one million dollars in future losses). The total jury award was thus three million dollars. The trial court reduced the noneconomic and economic damages by twelve percent to reflect the jury's finding of comparative negligence, such that the noneconomic damages totaled $982,520, the economic damages totaled $1,657,480, and both together equaled $2,640,000. The court then further reduced the noneconomic damages from $982,520 to $250,000 as required by the HCAA. *See*

1. Specifically, we granted certiorari on the following issue: "Where a jury's verdict in a medical malpractice case was reduced due to the statutory cap on noneconomic damages, [whether] the court of appeals err[ed] in holding that the defendant owes prejudgment interest on the gross amount of the verdict, including the uncollectible amount exceeding the cap."

2. The original complaint was filed by Duksin. After Duksin's death in November 2008, Goodwin was substituted as the plaintiff, and the action was converted into a wrongful death suit.

§ 13–64–302(1)(b). Thus, the final judgment was entered for $1,907,480. The court found that prejudgment interest[3] on that amount should be calculated on the amount of the judgment entered by the court after reducing the jury's verdict pursuant to the HCAA cap on noneconomic damages ($1,907,480), rather than on the total amount assessed by the jury ($2,640,000).

Goodwin appealed, arguing in part that interest should have been calculated on the total jury verdict amount, rather than on the reduced award ordered by the judge. The court of appeals agreed. Relying on the plain language of section 13–21–101(1), which governs the award of prejudgment interest in personal injury tort cases, it held that a court must calculate prejudgment interest "on the damages as awarded by the jury," which in this case would be the full $2,640,000. *Morris*, 159 P.3d at 672. The court of appeals thus reversed the trial court's computation of prejudgment interest and remanded the case for new calculations consistent with its opinion. *Id.* Dr. Morris appealed that decision.

## II. Standard of Review

■ The interpretation of section 13–21–101(1) is a question of law. *See People v. Rickman*, 178 P.3d 1202, 1206 (Colo.2008). Thus, we review de novo the court of appeals' construction of that statute. *See Robinson v. Colo. State Lottery Div.*, 179 P.3d 998, 1003 (Colo.2008).

■ We construe statutes to give effect to the intent of the General Assembly. *Bostelman v. People*, 162 P.3d 686, 689 (Colo. 2007). To determine that intent, we look first to the plain language of the statute, reading the words and phrases in context and construing them according to their common usage. *Id.* at 690. Only when the language is ambiguous or capable of more than one meaning do we consider other aids of construction. *Id.; Stamp v. Vail Corp.*, 172 P.3d 437, 442–443 (Colo.2007). In that circumstance, we may consider, for instance, "the consequences of a given construction, the end to be achieved by the statute, and

legislative history." *Bostelman*, 162 P.3d at 690.

## III. Analysis

■ Section 13–21–101 describes the manner in which interest is to be calculated on personal injury damages. It states that when a plaintiff claims interest on damages, "it is the duty of the court in entering judgment for the plaintiff in such action to add to the amount of *damages assessed by the verdict of the jury, or found by the court*, interest on such amount" calculated at nine percent annually. § 13–21–101(1) (emphasis added). Goodwin and Dr. Morris disagree as to the proper interpretation of the statute. Dr. Morris asserts that the phrase, "or found by the court," permits a court to calculate interest on the final judgment awarded by the court after any reductions are made to comply with the HCAA cap. Goodwin and the court of appeals, however, interpret the phrase, "or found by the court," to refer only to a finding by a trial court in a bench trial. The court of appeals relied on the plain language of the statute, articulating its position this way:

> First, in our view, the latter phrase "or found by the court" is clearly designed to cover the award of damages following a trial to the court sitting without a jury. Second, the reduced noneconomic damages following the application of the statutory cap are not damages "found by the court" but, rather, damages payable after the application of the cap.

*Goodwin*, 159 P.3d at 672.

Contrary to the court of appeals' holding, the meaning of section 13–21–101(1) is not plain and unambiguous, but rather contains more than one valid interpretation. For instance, as the court of appeals suggests, the phrase, "or found by the court," could refer to a finding made by a judge during a bench trial. However, nothing in the language of the statute suggests that the phrase, "or found by the court," should apply only when there has been no jury verdict. It is equally

---

**3.** We use the term "prejudgment interest" to refer to interest accruing from the time the action is filed until the judgment is satisfied. We note that pre-filing interest, which begins when

the action is accrued and ends when an action is filed, is "deemed to be a part of the damages awarded in the action" and is thus limited by the HCAA caps. § 13–64–302(2), C.R.S. (2007).

valid to interpret the phrase to refer to the court's assessment as to the amount of recoverable damages where, as here, the amount found by the jury is contrary to statutory law.

Our determination that the statute is ambiguous is consistent with a previous opinion by this court which describes section 13–21–101(1), the same subsection at issue today, as ambiguous. In *Seaward Construction Co., Inc. v. Bradley*, 817 P.2d 971, 973–76 (Colo. 1991), we interpreted the meaning of part of the same phrase at issue in this case: "the amount of damages assessed by the verdict of the jury." *See* § 13–21–101(1). In determining whether the "damages" referred to in the statute included compensatory damages alone, or whether they also included punitive damages, we determined that the statute was ambiguous. *Seaward*, 817 P.2d at 975. We concluded that "section 13–21–101 is not a model of clarity," and we noted that other parts of the statute were not "of assistance in resolving the ambiguity in the language of subsection (1) of section 13–21–101." *Id.* Having found the statutory language to be ambiguous, we turned to the intent of the legislature to ascertain the meaning of the statute, ultimately determining that punitive damages were not included in the statute. *Id.* at 975–76.

Because we find again today that the statutory language is ambiguous, we now attempt to discern the legislative purpose behind the enactment of section 13–21–101. We are guided in this endeavor by prior case law in which we discussed the purpose of this statute at length. This court has held repeatedly that the legislative purpose behind section 13–21–101 is to provide compensation to successful tort plaintiffs. For example, in *Allstate Insurance Co. v. Starke*, we stated that "prejudgment interest is an element of compensatory damages in actions for personal injuries." 797 P.2d 14, 19 (Colo.1990). Similarly, in *Seaward*, we discussed "the compensatory purpose of section 13–21–101." 817 P.2d at 976.

More specifically, this court has indicated that the purpose of providing prejudgment interest is to compensate a plaintiff "for the time value of the award eventually obtained against the tortfeasor." *Starke*, 797 P.2d at 19. Similarly, in *Todd v. Bear Valley*

*Village Apartments*, we stated that "the General Assembly instituted statutory prejudgment interest as a way of accounting for the time value of money." 980 P.2d 973, 981 n. 8 (Colo.1999)). In *Seaward*, we noted that prejudgment interest "is awarded to indemnify the plaintiff for the loss of earnings on that money due to its delayed payment." 817 P.2d at 975 (quoting *Coale v. Dow Chem. Co.*, 701 P.2d 885, 890 (Colo.App.1985)). In keeping with precedent, we hold that the legislative purpose behind awarding interest under section 13–21–101 is to compensate the plaintiff for the time value of the amount of his or her judgment.

Having identified the legislative purpose behind section 13–21–101, we must now attempt to effectuate that purpose in cases like the one at hand, where a jury's verdict exceeds the amount actually awarded in the final judgment. As noted above, the legislative purpose behind awarding interest under section 13–21–101 is to compensate the plaintiff for the time value of the amount of his or her judgment. An award of any additional interest above the amount of the final judgment is thus inconsistent with the compensatory purpose of the statute. Consequently, we conclude that the statute must be interpreted to provide interest on the amount awarded by the final judgment, regardless of the jury's determination.

In this case, section 13–21–101 mandates that Goodwin be awarded interest on the amount of the final judgment, $1,907,840. Because the court of appeals ordered interest on more than that amount, we reverse its opinion and remand for calculations consistent with this opinion.

Justice EID concurs in the judgment only.

Justice EID, concurring in the judgment only.

I agree with the majority that section 13–21–101, C.R.S. (2007), does not allow a claimant to collect prejudgment interest on the portion of a jury verdict that exceeds the noneconomic damages cap imposed by section 13–64–302, C.R.S. (2007). *See* maj. op. at 780. Unlike the majority, however, I find it unnecessary to delve into the legislative

purpose behind section 13–21–101. *See* maj. op. at 780. Rather, I would rely on the fact that a claimant cannot collect prejudgment interest on money damages to which he or she is not legally entitled. *See, e.g., Allstate Ins. Co. v. Starke,* 797 P.2d 14, 19 (Colo. 1990). Because Goodwin was not legally entitled to noneconomic damages in excess of section 13–64–302's cap, no prejudgment interest could be awarded on that excess. I would uphold the trial court on that basis.