Gloria OCHOA, Plaintiff–Appellee and Cross–Appellant,

v.

Eldad VERED, M.D., Defendant–Appellant and Cross–Appellee.

No. 06CA2134.

Colorado Court of Appeals, Div. IV.

April 17, 2008.

As Modified on Denial of Rehearing May 29, 2008.

Kidneigh & Kaufman, P.C., Stephen C. Kaufman, Denver, Colorado, for Plaintiff–Appellee and Cross–Appellant.

Retherford, Mullen, Johnson & Bruce, L.L.C., J. Stephen Mullen, Kimberly F. Wells, Colorado Springs, Colorado; Pryor, Johnson, Carney, Karr, Nixon, P.C., Elizabeth C. Moran, Greenwood Village, Colorado, for Defendant–Appellant and Cross–Appellee.

Opinion by Judge WEBB.

In this medical negligence action, defendant, Eldad Vered, M.D., appeals the judgment entered on a jury verdict in favor of plaintiff, Gloria Ochoa. Ochoa cross-appeals the trial court's post-trial order reducing the damage award and the calculation of pre-judgment interest. We affirm in part, reverse in part, and remand for further proceedings.

## Facts

Dr. Vered performed an emergency caesarean section on Ochoa at Parkview Medical Center, during which he used surgical sponges. Before Dr. Vered concluded the procedure, two operating room nurses reported that the sponges had been counted and the count was correct. Nevertheless, a sponge was left in Ochoa's abdomen, requiring another surgery to remove it a few days later.

Ochoa sued Dr. Vered, the nurses, and Parkview. Before trial she settled with and dismissed her claims against Parkview and the nurses. Dr. Vered then designated the nurses as nonparties at fault.

Over Dr. Vered's objection, the jury was instructed on the "captain of the ship" and res ipsa loquitur doctrines. It was also instructed to apportion fault, if any, between Dr. Vered and the nurses, to which Ochoa objected. The jury returned a verdict in favor of Ochoa, apportioning ninety percent fault to Dr. Vered and ten percent fault to the nurses, and awarding economic and noneconomic damages totaling $1,003,964.23.

On Dr. Vered's new trial motion, the court remitted the future medical expenses award from $250,000 to $75,000, reduced the damage award based on the Health Care Availability Act (HCAA) damage cap, section 13–64–302(1)(b), C.R.S.2007, and the jury's allocation of ten percent fault to the nurses, and entered judgment of $425,739.90.

## DR. VERED'S APPEAL

### I. Vicarious Liability and Respondeat Superior

#### A. Captain of the Ship Doctrine

■ Dr. Vered contends the trial court erred by instructing the jury that he was liable for the nurses' negligence based on the captain of the ship doctrine. We disagree.

■ The captain of the ship doctrine, which is grounded in respondeat superior, imposes vicarious liability on a surgeon for the negligence of hospital employees under

the surgeon's control and supervision during surgery. *Beadles v. Metayka*, 135 Colo. 366, 370–71, 311 P.2d 711, 713–14 (1957); *Young v. Carpenter*, 694 P.2d 861, 863 (Colo.App. 1984).

■ The doctrine applies when the surgeon assumes supervision and direction in the operating room. *Young*, 694 P.2d at 863; *see Krane v. Saint Anthony Hosp. Sys.*, 738 P.2d 75, 76–77 (Colo.App.1987)("[T]he alleged negligent act of the surgical nurse took place over two-and-one-half hours into the surgery, so there can be no factual dispute that the operating surgeon had assumed control.").

■ Vicarious liability depends on the right to direct or control the actions of another. *Russell v. Pediatric Neurosurgery, P. C.*, 15 P.3d 288, 291 (Colo.App.2000), *aff'd in part and rev'd in part*, 44 P.3d 1063, 1070–71 (Colo.2002) (*Russell II*). Thus, "an operating surgeon could be held liable for the acts of those assisting even where the surgeon had no voice in their selection." *Kitto v. Gilbert*, 39 Colo.App. 374, 382, 570 P.2d 544, 550 (1977).

■ Hence, in a medical negligence case involving acts or omissions during surgery, the jury should be instructed that a surgeon is vicariously liable for the negligence of subordinate hospital employees from the time the surgeon assumes control of the operating room until the surgeon concludes the procedure. *Id.* (discussing *Beadles* ).

■ We review jury instructions de novo to determine whether as a whole they accurately inform the jury of the governing law. *Fishman v. Kotts*, 179 P.3d 232, 235 (Colo.App.2007). A trial court's decision to give a particular jury instruction is reviewed for abuse of discretion. *Id.* However, when instructing a jury in a civil case, the trial court should generally use those instructions contained in the Colorado Jury Instructions that apply to the evidence under the prevailing law. *Id.; see* C.R.C.P. 51.1(1).

Here, the trial court gave the following jury instruction:

> The operating room staff, including [nurses], were under the control of the defendant Eldad Vered, M.D., at the time of this occurrence. Therefore, any act or omission of any member of the operating room staff, including [nurses], was in law the act or omission of defendant Eldad Vered, M.D.

Dr. Vered does not dispute that he was the surgeon of record who led the surgery; that he was entitled to give orders to the nurses during surgery; and that during the surgery the nurses had to report three sponge counts to him before he concluded the procedure.

Nonetheless, Dr. Vered asserts that he had no right to control how the nurses conducted the sponge counts because a written Parkview protocol states: "The members of the nursing surgical team will be responsible for counting sponges according to established procedure in order to provide quality patient care." However, in the absence of evidence negating Dr. Vered's right to control the operating room staff during surgery, this protocol does not overcome the presumption that, as the surgeon in charge, he had the authority and responsibility to direct the nurses to recount the sponges, if necessary. *See Rosane v. Senger*, 112 Colo. 363, 365, 149 P.2d 372, 374 (1944)(presumption that nurse was directed by surgeons), *superseded by statute on other grounds as stated in Russell II*, 44 P.3d at 1067.

Dr. Vered's reliance on *Berg v. United States*, 806 F.2d 978, 983 (10th Cir. 1986) (rejecting physician's liability under the captain of the ship doctrine because "The technologists experienced difficulty during Berg's unsuccessful angiogram because they had not been properly trained by the hospital to use equipment in the back-up room."), is misplaced. Here, Dr. Vered does not assert lack of training. Further, unlike here, the *Berg* court noted that the doctor "is not in a position to question the assurances given him by the technologists." *Id.* at fn. 3, 806 F.2d 978.

Thus, we conclude that the captain of the ship instruction was proper on the facts of this case, and that it accurately informed the jury of the governing law.

We are not persuaded otherwise by Dr. Vered's citation to out-of-state cases that have rejected the captain of the ship doctrine

as inconsistent with increasing specialization and modern hospital procedures regarding division of responsibility. *See, e.g., Tappe v. Iowa Methodist Med. Ctr.,* 477 N.W.2d 396, 403 (Iowa 1991); *Harris v. Miller,* 335 N.C. 379, 438 S.E.2d 731, 738 (1994); *Anglin v. Kleeman,* 140 N.H. 257, 665 A.2d 747, 751 (1995); *Sparger v. Worley Hosp., Inc.,* 547 S.W.2d 582, 585 (Tex.1977); *Thomas v. Raleigh Gen. Hosp.,* 178 W.Va. 138, 358 S.E.2d 222, 225 (1987); *Lewis v. Physicians Ins. Co.,* 243 Wis.2d 648, 627 N.W.2d 484, 494 (2001).

Other jurisdictions adhere to the doctrine. *See, e.g., Fields v. Yusuf,* 144 Cal.App.4th 1381, 51 Cal.Rptr.3d 277, 289 (2006); *Johnston v. Sw. Louisiana Ass'n,* 693 So.2d 1195, 1199–1200 (La.Ct.App.1997); *Rudeck v. Wright,* 218 Mont. 41, 709 P.2d 621, 626–27 (1985). Hence, we perceive no compelling reason to depart from the decisions of other divisions of this court that have adopted the doctrine. *See, e.g., Krane,* 738 P.2d at 76–77; *Young,* 694 P.2d at 863; *Kitto,* 39 Colo.App. at 381–82, 570 P.2d at 549. And in any event, we are bound by the supreme court's pronouncement in *Beadles. People v. Allen,* 111 P.3d 518, 520 (Colo.App.2004).

Nor are we persuaded by Dr. Vered's assertion that the trial court applied the most extreme version of the captain of the ship doctrine by instructing the jury that, as a matter of law, he controlled the nurses and was responsible for their actions, based on his status as the surgeon. According to Dr. Vered, while *Beadles* treated the instruction as appropriate based on evidence of the surgeon's actual authority in the operating room, dicta in *Bernardi v. Community Hospital Ass'n,* 166 Colo. 280, 443 P.2d 708 (1968), mistakenly extended the doctrine to all surgical negligence cases. We decline to address any possible conflict between *Beadles* and *Bernardi* because Dr. Vered failed to present evidence that he could not direct the nurses as to the sponge count.

The notes on use to Colorado Jury Instruction–Civil 15:1 provide that instructions "[a]s to the potential vicarious liability of a supervising physician or surgeon under the 'captain of the ship' doctrine," "modeled after Instructions 8:1 through 8:4 ... should be given." CJI–Civ. 4th 15:1 notes on use 3 (2007). Here, the captain of the ship instruction was properly modeled after Colorado Jury Instruction–Civil 8:2, which applies where only the principal is sued and the principal's authority over the agent is undisputed. CJI–Civ. 4th 8:2 (2007).

Accordingly, we conclude that the trial court did not abuse its discretion by giving the captain of the ship instruction.

**B. Settlement with the Nurses**

 Dr. Vered contends that even if this case is governed by the captain of the ship doctrine, he cannot be vicariously liable for the nurses' negligence because Ochoa released them. We disagree.

Here, the settlement agreement states in relevant part:

[Ochoa] and [Parkview Medical Center] desire to dismiss the action with prejudice, and to fully and completely settle all of the claims that have been brought, or could have been brought, in the action. This agreement is between [Parkview Medical Center] *and does not include the claims against the remaining Defendant, Eldad Vered, M.D.*

[Ochoa] ... releases, acquits and forever discharges Parkview Medical Center, Inc. and its ... employees ... from any and all claims ... arising out of or connected with the matters alleged in the Complaint in the action, [including] without limitation all of the claims which were brought, or which could have been brought, in this action or any other action related in any way to [Ochoa's] caesarean section delivery on June 2, 2002 in which a sponge was left inside [Ochoa's] body at the Parkview Medical Center in Pueblo, Colorado.

(Emphasis added.)

Dr. Vered relies on *Arnold v. Colorado State Hospital,* 910 P.2d 104, 107–08 (Colo. App.1995), while Ochoa relies on *Colorado Compensation Insurance Authority v. Jones,* 131 P.3d 1074, 1081 (Colo.App.2005), which distinguished *Arnold.* For the following reasons, we follow *Jones* rather than *Arnold. See In re Estate of Becker,* 32 P.3d 557, 563 (Colo.App.2000) (one division of the court of

appeals is not bound by the decision of another division), *aff'd sub nom. In re Estate of DeWitt*, 54 P.3d 849 (Colo.2002).

The *Arnold* division held that the employer could not be vicariously liable because the jury absolved the employee of liability for the plaintiff's injuries suffered in an accident involving a motor vehicle driven by the employee and because the plaintiff had dismissed his claims against the employee for sexual abuse that also allegedly occurred in the course and scope of employment. As to the latter aspect of its holding, the division explained, "it is generally agreed that the release of an employee releases the employer." *Arnold*, 910 P.2d at 107 (citing V. Woerner, Annotation, *Release of (or Covenant Not to Sue) Master or Principal as Affecting Liability of Servant or Agent for Tort, or Vice Versa*, 92 A.L.R.2d 533 (1963)). The division did not say whether the plaintiff in *Arnold* sought to reserve claims against the employer, despite dismissing the sexual abuse claim against the employee.

The *Jones* division held that the plaintiff's respondeat superior claims against the employer were not precluded because all claims against the employee had been dismissed under a settlement in which the plaintiff "expressly reserved his claims against [the employer]," citing *Dworak v. Olson Construction Co.*, 191 Colo. 161, 551 P.2d 198 (1976). *Jones*, 131 P.3d at 1081. The division distinguished *Arnold* on the basis that the jury had returned a verdict absolving the employee, but it did not address the voluntary dismissal of the sexual abuse claim.

In *Dworak*, the supreme court held that plaintiffs "who execute a covenant not to sue an employee" may nevertheless "sue an employer on the theory of [r]espondeat superior" despite "the absence of an express reservation of the right to do so." 191 Colo. at 164, 551 P.2d at 200. The court noted that this holding was in accord with the law of other jurisdictions. *Id.* The *Arnold* division did not discuss or cite *Dworak*.

Whether the settlement in *Jones* was a release or a covenant not to sue is not stated. Although *Dworak* involved a covenant not to sue, we perceive no distinction between a release and a covenant for purposes of preserving a respondeat superior claim against the employer. *See Meyer v. Stern*, 599 F.Supp. 295, 297 (D.Colo.1984) (rejecting distinction between a covenant not to sue and a release with express provisions reserving claims for imposing vicarious liability under Colorado law).

Moreover, here, as in *Jones*, Ochoa expressly reserved claims against the employer. The language in the settlement agreement evincing an intent to preserve claims against Dr. Vered should be given effect. *See id.* ("[A] release with express provisions reserving the right to sue other tort-feasors will be given the effect intended by the parties."); *cf. McCall v. Roper*, 685 P.2d 230, 232 (Colo.App.1984).

Dr. Vered asserts that under the majority view, release of an agent precludes a vicarious liability claim against the principal, and he cites out-of-state cases decided since *Dworak* supporting this assertion. *See, e.g., Heffley v. Adkins*, 209 Ga.App. 736, 434 S.E.2d 537, 538 (1993); *Grzan v. Charter Hosp.*, 702 N.E.2d 786, 792 (Ind.Ct.App.1998); *Waddle v. Galen of Kentucky, Inc.*, 131 S.W.3d 361, 365–66 (Ky.Ct.App.2004); *Felsner v. McDonald Rent–A–Car, Inc.*, 193 Mich.App. 565, 484 N.W.2d 408, 410 (1992); *Dickey v. Estate of Meier*, 188 Neb. 420, 197 N.W.2d 385, 387–88 (1972); *Riemers v. Grand Forks Herald*, 688 N.W.2d 167, 171 (N.D.2004); *Sisk v. J.B. Hunt Transp., Inc.*, 81 P.3d 55, 57 (Okla.2003); *Perkins v. Children's Orthopedic Hosp.*, 72 Wash.App. 149, 864 P.2d 398, 401–03 (1993). However, directly contrary language in *Dworak* precludes us from following this authority. *People v. Rivas*, 77 P.3d 882, 890 (Colo.App.2003).

Accordingly, we conclude that Ochoa's release of the nurses did not preclude Dr. Vered from being held vicariously liable for their negligence.

## II. Res Ipsa Loquitur Instruction

■ Dr. Vered next contends that because the evidence failed to support an inference that absent his negligence the sponge would not have been left in Ochoa's abdomen, the trial court erred by instructing the jury on res ipsa loquitur. Again, we disagree.

To justify such an instruction, the evidence must show (1) the occurrence of a harmful event ordinarily not occurring in the absence of someone's negligence, (2) caused by an agency or instrumentality within the exclusive control of the defendant, (3) without any voluntary contribution by the plaintiff, and (4) under circumstances such that evidence explaining the event causing the harm is more accessible to the defendant than to the plaintiff. *Kitto,* 39 Colo.App. at 379, 570 P.2d at 547; CJI–Civ. 4th 9:17 (2007)(collecting cases).

Here, Ochoa was not a contributing cause of the sponge being left in her abdomen, and Dr. Vered does not assert that evidence as to the cause of the sponge being left was equally accessible to her. But he disputes whether the sponge could have been left only if he was negligent and had exclusive control over counting the sponges, including control over the nurses responsible to count them.

As to the first disputed factor, in *Mudd v. Dorr,* 40 Colo.App. 74, 77–78, 574 P.2d 97, 100–01 (1977), the division held, as a matter of law, that "when, during the course of surgery, a foreign object such as a sponge is lost in a patient, a prima facie case of negligence is made out under the doctrine of res ipsa loquitur." *See also Fields,* 51 Cal. Rptr.3d at 283 ("The jury should have been instructed in unqualified language that if the surgeon closed the incision without first having removed the sponge, a *prima facie* case was thereby made against him as a matter of law . . . ." (quoting *Ales v. Ryan,* 8 Cal.2d 82, 64 P.2d 409, 421 (1936)) ); T.C. Williams, Annotation, *Physicians and Surgeons: Presumption or Inference of Negligence, in Malpractice Cases; Res Ipsa Loquitur,* 162 A.L.R. 1265 § V(d) (1946) (discussing cases where leaving a foreign object such as a sponge in a patient constitutes negligence by the operating surgeon as a matter of law); H.H. Henry, Annotation, *Physicians and Surgeons: Res Ipsa Loquitur, or Presumption or Inference of Negligence, in Malpractice Cases,* 82 A.L.R.2d 1262 § 18 (1962) (discussing cases where "it has been held or recognized that the leaving of a foreign object, such as a . . . sponge, in the body of a patient following an operation is sufficient in

itself to create a presumption or inference of negligence on the part of a physician or surgeon or to call for the application of the doctrine of res ipsa loquitur").

We consider *Mudd* well reasoned and adopt it here, notwithstanding the testimony of Dr. Vered's experts that a sponge left inside Ochoa does not in and of itself indicate negligence by him; that "leaving the sponge was an error . . . but it's not negligence" and "[w] e have to look at standard of care"; and that his "performance of the surgery was totally within the standard of care."

As to the second disputed factor, we have already concluded that the record shows Dr. Vered was in charge of the surgery and presumably could direct the nurses. Hence, he had exclusive control of the instrumentality of harm, the sponge. *See Mudd,* 40 Colo. App. at 77, 574 P.2d at 100 (concluding that the defendant doctor was captain of the ship who had exclusive control over a sponge left inside a patient); *Fields,* 51 Cal.Rptr.3d at 284 ("a surgeon cannot delegate responsibility for removing sponges from a patient's body"); *see also* H.H. Henry, at § 18.

We are not persuaded that the res ipsa loquitur instruction improperly shifted the burden of disproving negligence to Dr. Vered by his reliance on CRE 301 ("a presumption . . . does not shift to [the party against whom it is directed] the burden of proof").

In *Stone's Farm Supply, Inc. v. Deacon,* 805 P.2d 1109, 1114 n. 10 (Colo.1991), the supreme court held that res ipsa loquitur "requires the defendant to prove by a preponderance of the evidence that he was not negligent." Given this language, any tension between *Deacon* and Rule 301 must be resolved by the supreme court. *See* CJI–Civ. 4th 9:17 notes on use 3 ("The Committee does not take any position as to whether the statements . . . in [*Deacon* ] were intended to except the doctrine of *res ipsa loquitur* from the operation of Rule 301 or whether the statements were only dicta and Rule 301 governs the doctrine.").

Accordingly, we conclude that the trial court did not abuse its discretion by giving the res ipsa loquitur instruction.

### III. Postfiling, Prejudgment Interest

Last, Dr. Vered contends the trial court erred by awarding postfiling, prejudgment interest on the amount of noneconomic damages awarded by the jury, rather than on the $250,000 cap for noneconomic damages under the HCAA. We disagree.

■ Prejudgment interest that accrues after the action has been filed is not subject to the HCAA damage cap. *Scholz v. Metro. Pathologists, P.C.*, 851 P.2d 901, 911 (Colo. 1993).

■ Prejudgment interest from the date of filing the action to the date of entering judgment for noneconomic damages is to be calculated on the amount of damages assessed by the verdict of the jury and is not subject to the HCAA $250,000 cap. *Goodwin v. Morris*, 159 P.3d 669, 672 (Colo.App.2006) (*cert. granted* May 21, 2007).

We are persuaded by the reasoning in *Goodwin* and apply it here. Citing *Goodwin*, the trial court calculated postfiling interest based on the full amount of noneconomic damages awarded by the jury.

Accordingly, we conclude that the trial court did not err by calculating postfiling, prejudgment interest based on the jury's award.

### OCHOA'S CROSS–APPEAL

### I. Prejudgment Interest Calculation

■ Ochoa contends the trial court erred by not adding prefiling simple interest to the base for the prejudgment interest calculation. We agree.

■ Statutory interpretation is a question of law subject to de novo review. *Francis ex rel. Goodridge v. Dahl*, 107 P.3d 1171, 1176 (Colo.App.2005). When interpreting statutes, a court's task is to ascertain and give effect to the intent of the General Assembly. *Id.* To determine that intent, courts look to the statutory language, giving words or phrases their commonly accepted meaning. *Id.*

Section 13–64–302(2), C.R.S.2007, part of the HCAA, provides that "prejudgment interest awarded pursuant to section 13–21–101 [C.R.S.2007] that accrues during the time period beginning on the date the action accrued and ending on the date of filing of the civil action is deemed to be a part of the damages awarded ... and is included" within the HCAA's limits of $250,000 on noneconomic damages and $1,000,000 on total damages. *Wallbank v. Rothenberg*, 74 P.3d 413, 420 (Colo.App.2003).

Section 13–21–101(1), C.R.S.2007, "applies to all civil cases irrespective of the amount of damages awarded." *Scholz*, 851 P.2d at 911. It requires that prejudgment interest be determined by calculating simple interest on the amount of the judgment from the date the action accrued until the day before the action is filed. *Francis*, 107 P.3d at 1176. That simple interest amount should then be added to the amount of the judgment and used as an initial base amount for calculating compound interest annually from the date the action was filed until the date judgment is entered. *Id.*

Here, the parties agree that Ochoa's noneconomic damages were properly reduced to $250,000 under section 13–64–302, C.R.S. 2007. Ochoa is not seeking to recover prefiling interest in excess of the cap, but rather is seeking to recover slightly greater postfiling interest, which is not subject to the cap. *Id.*

Ochoa cites *Francis* to support her contention that prejudgment interest should have been calculated by adding the prefiling interest to the jury's unreduced award and then using that amount to calculate postfiling interest. Dr. Vered cites section 13–64–302(2) to support his contention that prefiling interest is subsumed in the damage cap. Neither party points to any legislative history of the HCAA.

■ Section 13–21–101 was in place before passage of the HCAA. *Scholz*, 851 P.2d at 911. We assume that the General Assembly was aware of the provisions in section 13–21–101 when it enacted the HCAA. *Id.* But we do not assume that the General Assembly intended to abrogate section 13–21–101 without a clear expression of its intent to do so. *Id.* Instead, when two statutes conflict, we strive to construe them harmoniously to give effect to both. *Id.*

Had the General Assembly intended that prefiling interest not be a component of the prejudgment interest calculation in cases subject to the HCAA caps, it could have said so expressly. By allowing prefiling interest to be a component of such a calculation and by capping Ochoa's noneconomic damages under the HCAA, both section 13–21–101 and the HCAA can be given effect.

Hence, we conclude that prefiling interest based on the unreduced jury award should be added to the award to calculate postfiling interest.

Accordingly, we further conclude that the trial court erred by excluding prefiling interest from its prejudgment interest calculation.

## II. Ten Percent Reduction of Liability

Ochoa contends the trial court erred in reducing Dr. Vered's liability by ten percent based on the jury's apportionment of fault to the nurses. We agree.

Before trial, Dr. Vered moved the court, inter alia, "to add the affirmative defense of entitlement to 'set-off'" based on the Parkview settlement. The court denied the motion, and Dr. Vered has not appealed that ruling.

Despite having denied the motion to amend, the trial court instructed the jury that it could apportion fault between Dr. Vered and the nurses. The court explained that such allocation might save the verdict if an appellate court determined that the captain of the ship instruction should not have been given.

At a post-trial hearing, the trial court observed that its written order on the motion to amend lacked clarity and reiterated that it had denied leave to add the affirmative defense, while allowing another amendment not here relevant. Nevertheless, the court subsequently reduced the damages awarded against Dr. Vered by ten percent, stating, "While it is true that part of the inclusion of the non-party liability determination was in the event of a reversal of the captain of the ship doctrine, the jury's finding notwithstanding the vicarious liability instructions must be entitled to weight." The court did not revisit its denial of the motion to amend.

### A. Joint Tortfeasors

A party whose liability is based on respondeat superior is not a joint tortfeasor and remains fully liable. *Serna v. Kingston Enters.*, 72 P.3d 376, 380 (Colo.App. 2002) (employer and employee were not joint tortfeasors where employer's liability was based on respondeat superior); *Arnold*, 910 P.2d at 107 (because employer's liability for employee's negligence is based on respondeat superior, an employer and employee are not joint tortfeasors and sections 13–50.5–101 to –106, C.R.S.2007, are inapplicable); *McCall*, 685 P.2d at 232 (where father's liability for plaintiff's injuries sustained in an accident when son was using the vehicle was vicarious, father and son were not joint tortfeasors); *see* 16 John R. Paddock, Jr., *Colorado Practice: Employment Law and Practice* § 14.13 (2d ed. 2007) ("In vicarious liability, there is no apportionment of fault because the master or principal is not a tortfeasor. Vicarious liability thus is all or nothing—an employer found liable based on vicarious liability may have to pay the entire amount of the victim's damages, rather than a portion of the damages equal to the employer's 'fault'....").

Hence, Dr. Vered's reliance on *Cruz v. Benine*, 984 P.2d 1173, 1179–80 (Colo.1999) ("payments in satisfaction of a claim against one joint tortfeasor are subtracted from the amount of any future verdicts against other tortfeasors") (citing section 13–50.5–105(1)(b)), C.R.S.2007), is misplaced. There, the parties seeking credit for a settlement with another party were treated as "potential joint tortfeasors."

Having determined Dr. Vered to be vicariously liable under the captain of the ship doctrine, we conclude that the damages cannot be reduced by the fault apportioned to the nurses based on principles applicable to joint tortfeasors.

### B. Double Recovery

Nevertheless, Dr. Vered asserts that unless the verdict is reduced, Ochoa recovers all her damages from him, but unfairly obtains additional compensation for the same

injury through the settlement. We are not persuaded.

In *McCall v. Roper*, cited by Dr. Vered, the division held that although the nonsettling defendant remained fully liable for the judgment, he was entitled to a credit for the amount of the settlement between the plaintiff and the settling defendant. 685 P.2d at 233. However, the credit had been ordered by the trial court and does not appear to have been disputed on appeal.

Dr. Vered also relies on section 13–50–103, C.R.S.2007, which provides that if "one or more joint debtors are released, no one of the remaining debtors shall be liable for more than his proportionate share of the indebtedness." We discern no basis for applying this statute here. Although the *McCall* division cited another provision of the joint rights and obligations statute, section 13–50–102, C.R.S.2007, the settling and nonsettling defendants there were co-debtors on the same judgment. Dr. Vered cites no case, nor have we found one, treating parties such as he and the nurses as joint debtors.

Further, while the trial court's action in reducing the damages based on fault of the nurses is difficult to reconcile with its denial of Dr. Vered's motion to amend his answer to plead a setoff, the fact remains that the court did not reverse this ruling when it reduced the damages award.

The effect of settlement with nonparties on a remaining party is a setoff that must be pled as an affirmative defense or is waived. *See* C.R.C.P. 8(c) (requiring a party to affirmatively plead any defense and mitigating circumstances); *Farmers Ins. Exch. v. Taylor*, 45 P.3d 759, 762 (Colo.App.2001) (treating setoff amounts as an affirmative defense); *see also Joseph V. Edeskuty & Assocs. v. Jacksonville Kraft Paper Co.*, 702 F.Supp. 741, 749 (D.Minn.1988) (a claim for a setoff is an affirmative defense for purposes of Fed. R.Civ.P. 8(c), which is identical to C.R.C.P. 8(c)). In his Reply/Answer Brief, Dr. Vered does not raise section 13–21–111.5, C.R.S. 2007, which provides for pro rata liability of defendants. Hence, we express no opinion whether section 13–21–111.5(3)(b), C.R.S. 2007 ("Negligence or fault of a nonparty may be considered if the claimant entered into a settlement agreement with the nonparty . . . ."), creates an exception to the pleading requirement of C.R.C.P. 8(c) where, as here, the nonparty with whom the plaintiff settled has been designated.

Accordingly, we conclude that the trial court erred in reducing Dr. Vered's liability by ten percent to account for fault the jury apportioned to the nurses.

### III. Remittitur of Future Medical Expenses

█ Last, Ochoa contends the trial court erred when it found that "the amount of the award, $250,000, is manifestly excessive and not supported by the evidence" and determined "that an award that can be supported is $75,000." We disagree.

█ We review a trial court's order of remittitur for an abuse of discretion. *Belfor USA Group, Inc. v. Rocky Mountain Caulking & Waterproofing, LLC*, 159 P.3d 672, 676 (Colo.App.2006).

█ The amount of damages to which an injured party is entitled is a matter within the sole province of the jury. *Miller v. Rowtech, LLC*, 3 P.3d 492, 495 (Colo.App. 2000). The jury's award of damages may not be set aside unless the verdict is grossly and manifestly excessive, or grossly and manifestly inadequate. *Burns v. McGraw–Hill Broad. Co.*, 659 P.2d 1351, 1356 (Colo.1983). The amount of damages awarded by a jury may not be disturbed unless it is completely without support in the record. *Miller*, 3 P.3d at 495.

Experts for both Ochoa and Dr. Vered testified that had they treated her after the second surgery to remove the sponge, they would have recommended she take antidepressant medication for approximately six months to three years and be in therapy for approximately ninety days to eighteen months.

Ochoa's expert also testified that she "needed to be seeing someone probably as [sic] least once a week" and that the cost of therapy could be up to $200 per session. The expert further testified that he would prescribe "one pill a day starting out" and that the cost of the medication ranged from

$1 to $3 per pill. Based on these figures, the likely therapy costs for one session per week for eighteen months is $15,600, and the costs for medication based on one dose per day for three years at $3 a pill is $3,285, for a total of $18,885. Thus, an award for $250,000 for future medical expenses was excessive and unsupported by the record.

We are not persuaded otherwise by Ochoa's reliance on her expert's testimony concerning therapy and medication in the future because she would always be more vulnerable to stress and her statutory life expectancy was 54.9 years. Her expert did not opine that her need for such treatment was probable. And even if she went through three more cycles of treatment involving the costs discussed above, $75,000 would still be adequate compensation.

Accordingly, we conclude that the trial court did not abuse its discretion in remitting the damages awarded for Ochoa's future medical expenses.

The judgment and order are reversed as to the prefiling, prejudgment interest calculation and the ten percent reduction of Dr. Vered's liability. The case is remanded for recalculation of the damage award consistent with this opinion. The judgment and order are affirmed in all other respects.

Judge CASEBOLT and Judge STERNBERG * concur.

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2007.