The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
February 8, 2018

## 2018COA15

### No. 16CA1521 & 17CA0066, *Marso v. Homeowners Realty* — Agency — Respondeat Superior — Affirmative Defenses — Setoff

In this civil case, the division decides two issues of first
impression. First, the division holds that when a party's liability is
based entirely on respondeat superior, a settlement with the agent
is setoff against the jury verdict entered against the principal. The
division also holds that statutory prejudgment interest accrues on
the jury verdict before the setoff.

Accordingly, the division reverses the district court's judgment
and remands the case with directions.

COLORADO COURT OF APPEALS                                        **2018COA15**

Court of Appeals Nos. 16CA1521 & 17CA0066
Mesa County District Court No. 11CV4626
Honorable Thomas M. Deister, Judge

Samuel A. Marso and Audrey S. Marso,

Plaintiffs-Appellants,

v.

Homeowners Realty, Inc., d/b/a Coldwell Banker Home Owners Realty, Inc.,

Defendant-Appellee.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE BERGER
Bernard and Freyre, JJ., concur

Announced February 8, 2018

Earl G. Rhodes, LLC, Earl G. Rhodes, Grand Junction, Colorado for Plaintiffs-Appellants

Davlin & Davlin, LLC, Shawn M. Davlin, Durango, Colorado for Defendant-Appellee Homeowners Realty, Inc.

¶ 1    This case requires us to decide whether a monetary settlement made with an agent must be set off against a jury verdict returned against the principal when the principal's liability is entirely dependent on the doctrine of respondeat superior.  And, if such a setoff is required, is the setoff made before or after statutory prejudgment interest accrues on the jury verdict?

¶ 2    We hold that Colorado law requires a setoff and that the setoff is made after statutory prejudgment interest accrues on the jury verdict.  While the trial court correctly ruled that a setoff was required, it erroneously concluded that statutory interest did not accrue until after the setoff was made.  Accordingly, we reverse the judgment and remand the case for further proceedings.

## I.    Relevant Facts and Procedure

¶ 3    Elly Dilbeck, who was employed by or associated with Homeowners Realty, Inc., d/b/a/ Coldwell Banker Home Owners Realty, Inc. (Coldwell),[1] acted as Sam and Audrey Marso's agent in

---

[1] The precise legal relationship between Dilbeck and Coldwell is not pertinent to our analysis because the parties do not contest that Coldwell is vicariously liable for any of the damages caused by Dilbeck.

their purchase of a house. At the time of purchase, the Marsos did not know that the builder used radioactive uranium mill tailings as fill material.

¶ 4    Two years after the purchase, the Marsos discovered that uranium tailings had been used, creating a potential health hazard. The Marsos filed a complaint against Dilbeck and Coldwell alleging negligence against Dilbeck and respondeat superior liability against Coldwell.[2]

¶ 5    Sometime before the scheduled trial date, the Marsos settled with Dilbeck for $150,000, inclusive of interest. In connection with the settlement, Dilbeck filed a written admission that her failure to disclose that uranium mill tailings may have been used in the Marsos' house fell below the standard of care for a real estate agent.

---

[2] The trial court initially granted summary judgment for Dilbeck and Coldwell on the basis that the Marsos had insufficiently supported their summary judgment response with evidence of damages. A division of this court reversed that summary judgment, holding that the Marsos' testimony regarding diminution of value was sufficient to meet their summary judgment burden. *Marso v. Dilbeck,* (Colo. App. No. 13CA1784, Oct. 23, 2014) (not published pursuant to C.A.R. 35(f)).

The settlement expressly preserved all claims against Coldwell, and a jury trial was then held only between the Marsos and Coldwell.[3]

¶ 6    The jury was instructed to determine the total amount of damages sustained by the Marsos and was not informed of the amount of the settlement with Dilbeck. The jury returned a verdict of $120,000 against Coldwell.

¶ 7    In post-trial proceedings, the trial court set off the settlement payment of $150,000 against the $120,000 jury verdict, resulting in a zero recovery for the Marsos. The court rejected the Marsos' argument that statutory prejudgment interest accrues on the jury verdict *before* the setoff. Because the settlement payment exceeded the jury verdict, the court entered judgment in favor of Coldwell and later entered a cost award against the Marsos of approximately $30,000.

---

[3] The settlement agreement was structured to avoid the usual rule that a release of the agent discharges the principal. *Arnold v. Colo. State Hosp.*, 910 P.2d 104, 107 (Colo. App. 1995). Neither party raises on appeal, and we do not address, the questions of whether or when a settlement with the agent causes the release of the principal or whether a settlement that contains an admission of liability by the agent always binds the principal.

## II. The Trial Court Did Not Abuse Its Discretion in Allowing Coldwell to Amend Its Answer and Assert the Affirmative Defense of Setoff

¶ 8 Shortly after learning of the settlement between Dilbeck and the Marsos, Coldwell moved to amend its answer to assert the affirmative defense of setoff. *See* C.R.C.P. 8(b)-(c); *Ochoa v. Vered*, 212 P.3d 963, 972 (Colo. App. 2009) (Setoff "must be pled as an affirmative defense or [it] is waived.").[4] The court granted the motion over the Marsos' timeliness objection. The Marsos contend the court abused its discretion in allowing this late amendment.

¶ 9 "Under well-established law, leave to amend is a discretionary matter which is left to the trial court to determine." *Polk v. Denver Dist. Court*, 849 P.2d 23, 25 (Colo. 1993). Thus, we review the court's determination for an abuse of discretion. *Id.* "A court abuses its discretion when its ruling is (1) based on an erroneous

---

[4] Setoff (or offset) is not one of the examples of affirmative defenses referenced in C.R.C.P. 8(c) that must be pleaded in accordance with C.R.C.P. 8(b). We express no opinion whether the pleading of a setoff is required when a statute expressly requires a court to apply the setoff. As explained below, here the setoff arises under the common law, and in those circumstances, we have no reason to dispute the conclusion in *Ochoa v. Vered*, 212 P.3d 963, 972 (Colo. App. 2009), that generally a setoff must be pleaded as an affirmative defense.

understanding or application of the law; or (2) manifestly arbitrary, unreasonable, or unfair." *Francis v. Aspen Mountain Condo. Ass'n, Inc.*, 2017 COA 19, ¶ 25.

¶ 10 "Trial courts may permit amendments to pleadings at any stage of the litigation process so long as undue delay does not result and other parties are not prejudiced by such amendments." *Nelson v. Elway*, 971 P.2d 245, 249 (Colo. App. 1998).

¶ 11 The Marsos do not contend that Coldwell's amendment caused an undue delay, but they do claim prejudice resulting from its timing. Although Coldwell's pleading of the affirmative defense of setoff ultimately reduced the final judgment entered in the Marsos' favor, for two reasons the amendment did not result in legal prejudice to the Marsos.

¶ 12 First, Coldwell did not obtain the settlement agreement until shortly before trial and so could not have properly raised the defense previously.[5] Second, while the setoff obviously detrimentally affected the Marsos, they had no right to rely on the

---

[5] The Colorado Rules of Civil Procedure prohibit the practice of pleading every conceivable affirmative defense without a factual basis for each affirmative defense. C.R.C.P. 12, cmt. 1.

absence of a setoff given the uncertainties in the substantive law regarding such setoffs. Nor have they explained how, if at all, the possibility of a setoff would have affected their litigation strategy or settlement posture.

¶ 13 Under these circumstances, we discern no abuse of the court's discretion in allowing Coldwell to pursue its setoff defense.

III. The Trial Court Correctly Set Off Dilbeck's Settlement Payment Against the Jury's Verdict

¶ 14 The Marsos next argue that the trial court erred when it set off the settlement payment against the jury verdict. We reject this contention.

¶ 15 Two Colorado statutes arguably address when a trial court must set off "compensation paid to avoid the risk of being held liable in tort" from a jury verdict against any nonsettling defendants. *Smith v. Zufelt*, 880 P.2d 1178, 1183 (Colo. 1994).

¶ 16 The first of these statutes is the "percentage statute," § 13-50.5-105, C.R.S. 2017. *Zufelt*, 880 P.2d at 1181. This statute implements, in part, the General Assembly's 1986 abrogation (with exceptions) of the doctrine of joint and several liability among tortfeasors and replaces that regime with one of proportionate fault.

6

*See id.*  The statute provides that when a release or covenant not to sue is given to one tortfeasor,

> [i]t does not discharge any of the other tortfeasors from liability for their several pro rata shares of liability for the injury, death, damage, or loss unless its terms so provide; *but it reduces the aggregate claim against the others to the extent of any degree or percentage of fault or negligence attributable by the finder of fact . . . to the tortfeasor to whom the release or covenant is given.*

§ 13-50.5-105(1)(a) (emphasis added).

¶ 17 But the percentage statute applies only when more than one person is responsible for the injuries suffered by the plaintiff.  By its terms, it has no application when, as here, one party (Coldwell) is vicariously liable solely under the doctrine of respondeat superior and not because the party itself violated any legal duty.[6]  "A party whose liability is based on respondeat superior is not a joint tortfeasor . . . ."  *Ochoa*, 212 P.3d at 971; *see Arnold v. Colo. State Hosp.*, 910 P.2d 104, 107 (Colo. App. 1995).  Thus, the percentage statute does not apply here.

---

[6] The Marsos did not assert any claim of negligent hiring or supervision, proof of which would provide a separate basis for Coldwell's liability.  *See Ferrer v. Okbamicael*, 2017 CO 14M, ¶ 27.

¶ 18 The second potentially applicable statute, the "amount statute," § 13-21-111.6, C.R.S. 2017, *see Zufelt*, 880 P.2d at 1181, also does not apply here. While the exact intent of the General Assembly in enacting this statute has confounded Colorado courts for years, *compare Simon v. Coppola*, 876 P.2d 10, 17-18 (Colo. App. 1993), *with id.* at 20-25 (Briggs, J., specially concurring), at a minimum, it preserves the common law collateral source rule, at least in some respects.

¶ 19 In *Wal-Mart Stores, Inc. v. Crossgrove*, the supreme court resolved some of this confusion and explained that the General Assembly enacted this statute to both reduce double recoveries resulting from applications of the collateral source rule and to prevent a defendant from benefitting from the plaintiff's purchase of insurance or other indemnity. 2012 CO 31, ¶¶ 14-16. The statute provides, in pertinent part, as follows:

> In any action . . . to recover damages for a tort . . . the court, after the finder of fact has returned its verdict stating the amount of damages to be awarded, shall reduce the amount of the verdict by the amount by which such person . . . has been or will be wholly or partially indemnified or compensated for his loss by any other person, corporation,

insurance company, or fund in relation to the
injury . . . .

§ 13-21-111.6. Although the plain language of this statute suggests that a settlement reached with a settling defendant must be set off against a jury verdict against the nonsettling defendant, the supreme court held otherwise in *Zufelt*, 880 P.2d at 1183-84.

¶ 20 There, the supreme court analyzed the amount statute in a context in which arguably *either* the amount statute or the percentage statute applied. *Id.* at 1182. The question was whether the amount statute or the percentage statute applied to compensation paid to avoid the risk of being held liable in tort. *Id.* Relying in part on Judge Briggs' special concurrence in *Simon*, 876 P.2d at 20-25, the supreme court concluded that:

> the amount statute does not mention
> payments made to avoid liability at trial. We
> are not persuaded, therefore, that the General
> Assembly intended that the amount statute
> apply not only to payments from a collateral
> source independent of any wrongdoing, but
> also to compensation paid to avoid the risk of
> being held liable in tort.

*Zufelt*, 880 P.2d at 1183.

¶ 21 The context of the supreme court's analysis of the amount statute is different than the context here because in *Zufelt*, if the

9

amount statute did not apply, the percentage statute certainly did. *Id.* at 1182. In contrast, here the only question is whether the amount statute applies, because the percentage statute cannot. However, as an intermediate appellate court, we are not "at liberty to disregard" a rule established by the supreme court "absent some clear indication" that the supreme court "has overruled it." *Silver v. Colo. Cas. Ins. Co.*, 219 P.3d 324, 330 (Colo. App. 2009). The supreme court held in *Zufelt* that the amount statute does not apply "to compensation paid to avoid the risk of being held liable in tort." 880 P.2d at 1183. We thus conclude that Coldwell is not entitled to a setoff under the amount statute.

¶ 22 Because neither the percentage statute nor the amount statute permits a setoff in this case, we must determine whether any other law authorizes the setoff of the settlement payment against the jury's verdict.

¶ 23 In so doing, we first conclude that the General Assembly did not intend to preempt common law setoff rules, except to the extent addressed by the specific statutes. Were we to conclude that the General Assembly fully occupied that space, we could not look to the common law to determine if any common law rule authorizes a

10

setoff because "we acknowledge and respect the General Assembly's authority to modify or abrogate common law." *Vigil v. Franklin,* 103 P.3d 322, 327 (Colo. 2004); *see* § 2-4-211, C.R.S. 2017.

¶ 24 But it is apparent to us that the General Assembly did *not* intend to encourage windfalls to plaintiffs. Precisely the opposite motivated the General Assembly, at least in enacting the percentage statute. *See Van Waters & Rogers, Inc. v. Keelan,* 840 P.2d 1070, 1077 (Colo. 1992).

¶ 25 The parties have not cited, and we have not found, any Colorado case law that addresses the amount statute, the percentage statute, or common law setoff rules when liability is premised exclusively on the doctrine of respondeat superior.[7] We thus turn to the common law applicable when a nonsettling defendant is liable solely under the doctrine of respondeat superior and not because of any

---

[7] Both parties cite *Ochoa,* but neither party in *Ochoa* raised the amount statute, percentage statute, or common law setoff rule. Instead, the parties in *Ochoa* focused on the application of *McCall v. Roper,* 32 Colo. App. 352, 511 P.2d 541 (1973), section 13-50-103, C.R.S. 2017 (liability of remaining debtor statute), and the effect of the trial court's denial of the defendant's motion to amend his answer to plead the defense of setoff. *Ochoa,* 212 P.3d at 972. Except for the last question, which is addressed above, none of these considerations are relevant here.

wrongdoing by that defendant. The Restatement (Second) of Torts,

§ 885(3) (2017), contains a common law setoff rule that does not

appear to differ depending on whether the liability of the principal

results exclusively from the doctrine of respondeat superior. *See*

*Villarini-Garcia v. Hosp. del Maestro*, 112 F.3d 5, 7-8 (1st Cir. 1997).

¶ 26 The Michigan Supreme Court decided a case remarkably similar

to the present case: *Kaiser v. Allen*, 746 N.W.2d 92 (Mich. 2008).

Like Colorado, Michigan has enacted statutes dealing with setoffs

when the defendants are joint tortfeasors. *Id.* at 94. Rather than

holding that because those statutes are inapplicable to the

respondeat superior situation, no setoff is appropriate, the court

looked to common law setoff rules and determined that a setoff was

required. *Id.* Under the applicable common law rule, any payment

"made in compensation of a claim for a harm" will reduce the

liability of the remaining defendants, "whether or not the person

making the payment is [the] liable [person]." Restatement (Second)

of Torts § 885(3). Thus, the court held that the plaintiff's jury

award against a vicariously liable party "must be reduced pro tanto[8] by [the] plaintiff's settlement proceeds from" another party. *Kaiser*, 746 N.W.2d at 97.

¶ 27 Similarly, in *Villarini-Garcia*, the First Circuit held that under Puerto Rico law, a jury award against one defendant must be set off against a settlement payment made by another defendant who was vicariously liable for the same injury. 112 F.3d at 7-8. Relying on the Puerto Rico Supreme Court's "general hostility to double recovery," the First Circuit applied the "modern rule" exemplified by the Restatement. *Id.*

¶ 28 We agree with the Michigan Supreme Court's and First Circuit's analyses and hold that, in the absence of a governing statute (or any indication that the legislature intended to entirely displace common law setoff rules), the common law setoff rules remain in force.

¶ 29 Reaching an opposite conclusion would require us to assume that the General Assembly intended to preclude windfall recoveries

---

[8] *Black's Law Dictionary* 1417 (10th ed. 2014) defines pro tanto as "[t]o that extent; for so much; as far as it goes."

in cases in which there are joint tortfeasors, but to permit such recoveries when the basis for liability is respondeat superior. Such a conclusion is contrary to every indication of legislative intent that we can glean. Importantly for present purposes, the statutes enacted by the General Assembly "limit the circumstances under which a plaintiff can receive double compensation for an injury." *Van Waters*, 840 P.2d at 1075; *see also Volunteers of Am. Colo. Branch v. Gardenswartz*, 242 P.3d 1080, 1088-89 (Colo. 2010) (Rice J., dissenting).

¶ 30 In so holding, we do not disregard the Colorado public policy that favors the settlement of disputes. In his concurrence in *Simon*, 876 P.2d at 24, Judge Briggs outlined two reasons that a setoff under the amount statute could discourage settlements.

¶ 31 The first of these reasons is that an injury victim would be less likely to settle because he or she

> would know that any benefit obtained from making what proves to have been a good settlement could be taken away and bestowed on the tortfeasors who refuse to settle, even to the extent that the injury victim could receive less than full compensation as determined at trial.

*Id.* But, in a case of vicarious liability, there is no risk that a settlement will result in the victim receiving "less than full compensation as determined at trial" because there is no apportionment of damages, *see Ochoa*, 212 P.3d at 971. Plaintiffs also realize the benefit of "good settlements" that are greater than the amount awarded by the jury.

¶ 32 Second, Judge Briggs noted that joint tortfeasors would be discouraged from settling:

> [T]ortfeasors would have an incentive not to settle, hoping that intransigence would be rewarded when another tortfeasor settled for an amount in excess of its true liability.

*Simon*, 876 P.2d at 24 (quoting *Kussman v. City & Cty. of Denver*, 706 P.2d 776, 781 n.5 (Colo. 1985)).

¶ 33 Although the setoff of settlements in cases of vicarious liability might, in particular circumstances, reduce the incentive to settle, just like any setoff of a settlement against a later jury verdict may reduce the incentive to settle, we think that the clear public policy of avoiding windfalls must take precedence in the common law realm, just as it does under the statutory scheme. *See id.*

¶ 34 For these reasons, we conclude the court correctly set off the settlement payment against the jury's verdict.

## IV. The Trial Court Erred When It Set Off the Settlement Payment Before the Statutory Interest Accrued on the Jury Verdict

¶ 35 The Marsos next contend the trial court erred when it set off the settlement payment *before* statutory prejudgment interest accrued on the jury verdict. We agree.

¶ 36 Whether statutory prejudgment interest accrues on the jury verdict before or after the setoff matters a lot, as this case illustrates. If, as the trial court ruled, interest does not accrue until after the setoff, Coldwell is the prevailing party for purposes of assessing costs. But, if interest accrues before the court makes the setoff, it is likely that the Marsos are the prevailing party.

¶ 37 Eight years passed between the tortious conduct by Dilbeck and the date the jury entered its verdict. By operation of law, a jury verdict in a case such as this accrues interest at the statutory rate. *See* § 5-12-102(4), C.R.S. 2017 ("Except as provided in section 5-12-106, creditors shall be allowed to receive interest on any judgment recovered before any court authorized to enter the same within this state from the date of entering said judgment until

satisfaction thereof . . . ."); *see also* § 5-12-106, C.R.S. 2017 (establishing rate of interest in cases where "a judgment for money in a civil case is appealed by a judgment debtor").

¶ 38 As the statutory language indicates, a court has no discretion to dispense with awarding this interest. *Barrett v. Inv. Mgmt. Consultants, Ltd.*, 190 P.3d 800, 804 (Colo. App. 2008).

¶ 39 "The addition of prejudgment interest to a judgment for compensatory damages recognizes that the loss caused by the tortious conduct occurred at the time of the resulting injury but that the damages paid to compensate for that loss are not received by the injured party until later." *Seaward Constr. Co. v. Bradley*, 817 P.2d 971, 975 (Colo. 1991). Prejudgment interest compensates the plaintiff for the loss of earnings on that money due to its delayed payment and is therefore necessary to make the plaintiff whole. *Id.* Put another way, prejudgment interest is an integral component of a jury award of damages.

¶ 40 The present case illustrates the fundamental unfairness of setting off a settlement against a jury award before it accrues interest. The damages sustained by the Marsos were not limited to the amount of the jury verdict. By law, those damages included

17

statutory prejudgment interest. *See* § 5-12-102. Making the setoff before the interest accrues means that the interest component of a jury verdict, required by statute, is disregarded. Thus, we hold that in the circumstances presented here, the setoff must be made against the jury verdict *after* statutory prejudgment interest accrues on the jury verdict.

¶ 41 For two reasons we reject Coldwell's and the trial court's reliance on *Ferrellgas, Inc. v. Yeiser*, 247 P.3d 1022, 1028-29 (Colo. 2011), for the proposition that interest accrues only after the setoff. First, as *Ferrellgas* explicitly states, the rule of decision in that case was based on the law of subrogation. *Id.* at 1028. The present case is not a subrogation case; no subrogation claim was asserted by any party.

¶ 42 Second, as we have explained above, the purposes of the common law setoff rule is to prevent double recoveries, not frustrate a claimant's ability to obtain full compensation for injuries caused by the tortious conduct of another. Application of the setoff before interest accrues meets no legitimate objective of the setoff rule (nor any other valid interest). To the contrary, application of the setoff before interest accrues frustrates the public policy of permitting

injured parties to be made whole. *See Kirk v. Denver Pub. Co.*, 818 P.2d 262, 265 (Colo. 1991).

¶ 43 Similarly, cases addressing the timing of interest accrual when a statutory cap limits a claimant's recovery, *see Morris v. Goodwin*, 185 P.3d 777, 780 (Colo. 2008), have no application here. A statutory cap reflects a legislative policy that, despite the fact that a claimant suffers a particular amount of damages, other public policies justify the existence of a cap such that the injured party will not recover the full amount of the suffered damages. *Colo. Permanente Med. Grp., P.C. v. Evans*, 926 P.2d 1218, 1229 (Colo. 1996). Thus, statutory caps on damages address interests entirely different than those of a setoff rule. As explained above, when, as here, there is no statutory cap on recovery, the application of a setoff before statutory interest accrues on the jury verdict renders an unfair result not compelled by any Colorado statutes or common law principles.

¶ 44 Based on these principles, the court must set off the settlement payment amount against the sum of the jury verdict and the statutory interest that had accrued on the verdict at the time of the settlement payment. Put another way, the court must calculate the

interest that accrued on the jury's verdict from the date of the Marsos' injury to the date of Dilbeck's settlement payment and add it to the jury verdict. This amount represents the *total amount* of the jury verdict. (When the Marsos received Dilbeck's settlement payment, they were compensated (at least in part) for their injury. § 5-12-102(1)(b).)

¶ 45 If, after the setoff, the Marsos have not been fully compensated for their loss as determined by the jury (plus the sum of the statutory interest described above), the court must also calculate the interest that accrued on the unpaid amount from the date of the settlement payment to the date of the setoff which, in that event, constitutes the recoverable prejudgment interest.[9]

## V. Conclusion

¶ 46 The judgment is reversed and the case is remanded for further proceedings, as described in the immediately preceding paragraphs.

---

[9] Given the amount of the jury verdict, the amount of the settlement, the number of years of prejudgment interest, and the statutory rate of prejudgment interest, *see* section 5-12-102, C.R.S. 2017, a judgment in favor of Coldwell on remand seems unlikely. Nevertheless, it is for the trial court to make these computations and enter an appropriate judgment.

Because we have reversed the judgment in favor of Coldwell, we also reverse the cost award in its favor.

JUDGE BERNARD and JUDGE FREYRE concur.