Vance A. ADAMS, Shane L. Allen, Richard A. Allison, Sean Andrews, Edward Armijo, Isaac Banks, Oscar Barron, Kenneth Batts, John Bowen, Harold Brantley, Neil G. Breaman, Roy D. Buck, Ronald Buzzard, Jr., Augustine S. Cabral, Clinton T. Caldwell, Patrick Calf Robe, Israel Chavez, Brandon Lee Clary, Robin B. Combs, Sr., David Cooper, Joseph Decker, Robert Dermates, Daniel Diaz, Phillip Dixon, Justin Dougherty, Wesley Fair, Jose Fernandez, Thomas G. Gallegos, Anthony Garza, Roy Gibbens, Oliver Giller, Donald Gilliland, Jeff Gillis, Zelo Goings, Mwamba H. Goma, Delfino Gonzales, Richard Gonzales, Erwin P. Greer, James Hackett, Bruce Hatfield, Rodney J. Harris, Billy Hendrix, Jeff Howard, Warren N. Johnson, Billy Lee Jones, Douglas Justice, Thomas Kennedy, Joseph Kingsbury, Matt Kulas, Ronald Larkins, Uimaiama Luasiva, James Lawver, Mason LeVee, Mike Lopez, Joseph Lujan, Kenneth Mackey, Rick Maestas, Carlos Rey Martinez, Tommy McClain, Pablo Melendez, Donald Mester, Brian Mills, Daniel Dean Morris, Terry Mowatt, Anh Vu Nguyen, William Osterfoss, Socrates Packer, Stephen D. Peck, Carroll Pollard, Paul I. Pollard, Jr., George L. Ramey, William J. Roper III, Timothy L. Schaaf, Donald C. Scho-

loff, Jeremy Simmons, Carlos Smith, Rick Smith, Robby Ray Summa, Paul Wade, Chris Watkins, Deon Waynewood, Jerry M. Weir, Tyronne Williams, Christopher J. Wimberly, and David E. Wright, Plaintiffs–Appellants,

v.

CORRECTIONS CORPORATION OF AMERICA, a Tennessee corporation; Brent Crouse, Warden, Crowley County Correctional Facility; Bill Bridges, Associate Warden, Crowley County Correctional Facility; Michael Miller, Associate Warden, Crowley County Correctional Facility; Richard Selman, Chief of Security, Crowley County Correctional Facility; Captain Palomino, Crowley County Correctional Facility; Captain Garcia, Crowley County Correctional Facility; Lieutenant Luna, Crowley County Correctional Facility; S.O.R.T. Commander John Jaramillo, Crowley County Correctional Facility; Michael Baca, Huerfano County Correctional Center; Alan Blanco, Crowley County Correctional Facility; Raymond Carroll, Huerfano County Correctional Center; Thomas Crump, Huerfano County Correctional Center; Ely DeJesus, Huerfano County Correctional Center; H. Galindo, Kit Carson Correctional Center; Donald Garcia, Crowley County Correctional Facility; Robert Griffith, Crowley County Correctional Facility; Chad Kastelic, Crowley County Correctional Facility; Steve Luna, Crowley County Correctional Facility; Paul Pacheco, Huerfano County Correctional Center; John Palomino, Crowley County Correctional Facility; Eddie Rubio, Crowley County Correctional Facility; Brad Schloss, Huerfano County Correctional Center; Adam Vigil, Huerfano County Correctional Center; Lisa Vigil, Huerfano County Correctional Center; Jeff Cordova, Crowley County Correctional Facility; Terry DeVore; Raymond Flores, Crowley County Correctional Facility; Manuel Gonzales, Crowley County Correctional Facility; Earnest Montanez, Crowley County Correction-

al Facility; Phillip Otero, Crowley County Correctional Facility; Rolando Fernandez, Bent County Correctional Facility; Les Harness, Bent County Correctional Facility; B. King, Bent County Correctional Facility; R. Ordonez, Kit Carson Correctional Center; Scott Pruett, Crowley County Correctional Facility; O.J. Shelden, Bent County Correctional Facility; and James Taylor, Huerfano County Correctional Center, Defendants–Appellees.

No. 07CA0681.

Colorado Court of Appeals,
Div. V.

May 29, 2008.

Trine & Metcalf, P.C., William A. Trine, Cheryl L. Trine, Boulder, Colorado; Public Justice, P.C., Adele P. Kimmel, Washington, D.C., for Plaintiffs–Appellants.

Hall & Evans, L.L.C., Andrew D. Ringel, Denver, Colorado; Jones, Skelton & Hochuli,

P.L.C., Eileen Dennis GilBride, Phoenix, Arizona, for Defendants–Appellees.

Opinion by Judge VOGT.

Plaintiffs, Vance A. Adams and eighty-four other individuals, were incarcerated in the Crowley County Correctional Facility (CCCF), a private prison housing inmates pursuant to a contract with the Colorado Department of Corrections, at the time of a July 2004 riot at CCCF. They brought this action against defendants, Corrections Corporation of America (CCA), which owns CCCF, and several CCA employees, alleging that they were not involved in the 2004 riot but nevertheless sustained injuries as a result of defendants' acts and omissions before, during, and after the riot. Plaintiffs sought compensatory and punitive damages on theories of negligence, assault and battery, outrageous conduct, and civil conspiracy. The trial court dismissed the complaint for failure to exhaust administrative remedies pursuant to section 13–17.5–102.3(1), C.R.S.2007, and additionally dismissed the claim for punitive damages as premature. We affirm in part, reverse in part, and remand for further proceedings.

I.

■ Plaintiffs contend the trial court erred in dismissing their complaint because section 13–17.5–102.3(1) does not require exhaustion of remedies where only common law tort claims are asserted. We agree.

■ Construction of a statute presents a question of law that we review de novo. *People v. Madden,* 111 P.3d 452, 457 (Colo. 2005).

A.

Section 13–17.5–102.3(1), states:

No inmate shall bring *a civil action based upon prison conditions under any statute or constitutional provision* until all available administrative remedies have been exhausted in a timely fashion by the entity operating the detaining facility and inmate. For purposes of this subsection (1), an inmate shall be considered to have exhausted all available administrative remedies when the inmate has completed the last step in the inmate grievance process as set forth in the regulations promulgated by the entity operating the detaining facility. Failure to allege in the civil action that all available administrative remedies have been exhausted in accordance with this subsection (1) shall result in dismissal of the civil action.

(Emphasis added.)

No published opinion has addressed whether this statute, which requires an inmate to exhaust administrative remedies before bringing "a civil action based upon prison conditions under any statute or constitutional provision," also requires exhaustion when claims are brought, not under any statute or constitutional provision, but under the common law. In an unpublished opinion, the federal district court in Colorado rejected CCA's argument that an inmate's negligence claim should be dismissed for failure to comply with section 13–17.5–102.3(1), reasoning: "[B]y its plain language, this provision applies to claims, unlike [the inmate's] state law claims, brought pursuant to a statute or constitutional provision." *Wallin v. Alfaro,* 2005 WL 2125224 (D.Colo. No. Civ.A03CV00281WDMMJW, Sept. 2, 2005). In the only published case to have construed the statute, *Glover v. State,* 129 P.3d 1083 (Colo.App.2005), a division of this court upheld the dismissal, under section 13–17.5–102.3(1), of an inmate's complaint asserting both a statutory violation and conspiracy to commit various crimes, but it did not address the issue presented here.

We therefore construe the statute according to well-established principles governing statutory interpretation. Our primary task in construing a statute is to ascertain and give effect to the intent of the General Assembly. To do so, we look first to the language of the statute, giving the words and phrases their plain and ordinary meaning. If that meaning is clear, we must give full effect to the words chosen, as it is presumed that the General Assembly meant what it clearly said. *Ceja v. Lemire,* 154 P.3d 1064, 1066 (Colo.2007); *State v. Nieto,* 993 P.2d 493, 500 (Colo.2000).

Section 13–17.5–102.3(1) requires exhaustion in civil actions brought "under any statute or constitutional provision." Giving the words used by the General Assembly their plain and ordinary meaning, it is clear that that phrase does not encompass civil actions brought under the common law. *See* Black's Law Dictionary 293 (8th ed.2004) (defining "common law" as the "body of law derived from judicial decisions, rather than from statutes or constitutions").

We may not presume that the General Assembly's omission of "common law" from the phrase "under any statute or constitutional provision" was unintentional. *See Brooke v. Restaurant Services, Inc.*, 906 P.2d 66, 70–71 (Colo.1995) (concluding, based on plain language of section 24–34–306(14), C.R.S.2007, that General Assembly intended to require exhaustion of administrative remedies only for claims filed pursuant to Antidiscrimination Act, not for claims seeking relief at common law, and observing: "When the legislature has intended to preclude all claims of a certain type or all claims which could have been pled as that type, it has used clear language to that effect."); *see also Auman v. People*, 109 P.3d 647, 656–57 (Colo. 2005) (noting importance of what statute did not say, and concluding that supreme court "should not construe these omissions by the General Assembly as unintentional"); *Beeghly v. Mack*, 20 P.3d 610, 613 (Colo.2001) (applying rule of *expressio unius exclusio alterius* to conclude that legislature could not have intended to provide default judgment as remedy for failure to post a bond); *People v. J.J.H.*, 17 P.3d 159, 162 (Colo.2001) (courts should not presume that legislature used language idly and with no intent that meaning should be given to it).

Accordingly, we conclude that section 13–17.5–102.3(1) does not, by its plain language, require exhaustion of administrative remedies before bringing a civil action based on prison conditions when such action consists only of claims brought under the common law.

## B.

Defendants advance several arguments supporting their contention that section 13–17.5–102.3(1) should nevertheless be read as barring the claims asserted here. In assessing defendants' contentions, we may consider the statute's legislative history notwithstanding our conclusion that the statutory language is unambiguous. *See People v. Rockwell*, 125 P.3d 410, 418–19 (Colo.2005) (although court was not required to inquire into legislative history where statutory language was clear and unambiguous, it would do so to show that legislative history did not contradict its interpretation of that language); *B.G.'s, Inc. v. Gross*, 23 P.3d 691, 696 (Colo.2001) (considering legislative history as further support for its conclusion based on plain language of statute); *Ackerman v. Power Equipment Co.*, 881 P.2d 451, 452 (Colo.App.1994) (having found statute unambiguous on its face, court would nevertheless consider legislative history "solely to answer plaintiff's assertion"). Having done so here, we conclude that none of the arguments raised by defendants permits us to construe the statute contrary to its plain language.

## 1.

Defendants contend there would have been no reason for the General Assembly to reference claims brought under the common law because Colorado courts consider only statutory or constitutional claims as "worthy of or appropriate for court review," and do not intervene in matters of prison administration and discipline unless a constitutional or statutory violation is involved. We do not agree.

The authorities on which defendants rely, *Powell v. Colorado Public Utilities Commission*, 956 P.2d 608, 614 (Colo.1998), and *Reeves v. Colorado Department of Corrections*, 155 P.3d 648, 651 (Colo.App.2007), do not support the broad proposition for which they are cited. *Powell* involved an inmate complaint filed with the Public Utilities Commission regarding alleged overcharges for inmates' personal telephone calls, and *Reeves* addressed a request for C.R.C.P. 106(a)(2) review of the Department of Corrections' (DOC's) classification of an inmate as a sex offender. Neither involved common law tort claims such as those at issue here. Such

claims have been entertained by the courts, both before and since the enactment of section 13–17.5–102.3(1). *See Nieto*, 993 P.2d at 499 (negligence claim against DOC and its employees based on inadequate medical care); *Davis v. Paolino*, 21 P.3d 870, 871 (Colo.App.2001) (personal injury action against DOC and employee to recover for injuries sustained in slip and fall incident); *see also Norsby v. Jensen*, 916 P.2d 555, 560– 62 (Colo.App.1995) (upholding dismissal of plaintiff's negligence claims against DOC and its employees because defendants were immune from liability).

Although defendants also cite section 17– 1–111, C.R.S.2007, in support of their contention that only statutory or constitutional claims are worthy of court review, that statute simply states that the provisions of Title 17 "relating to the placement, assignment, management, discipline, and classification of inmates" are not subject to the Administrative Procedure Act. It does not purport to preclude courts from reviewing common law tort claims such as those asserted in this lawsuit.

### 2.

We also disagree with defendants' contention that the General Assembly would not have had to include common law tort claims in section 13–17.5–102.3(1) because such claims would necessarily be barred under section 24–10–106(1.5)(a), C.R.S.2007, which preserves sovereign immunity for tort claims brought by claimants "who have been convicted of a crime and incarcerated in a correctional facility or jail pursuant to such conviction."

Initially, we note defendants' statement that they are raising their governmental immunity argument simply for the purpose of refuting plaintiffs' statutory interpretation, and that they did not raise governmental immunity in the trial court because they "wanted to avoid discovery" on sovereign immunity issues. We agree that the issue of defendants' potential immunity under the Colorado Governmental Immunity Act, sections 24–10–101 to –120, C.R.S.2007, must initially be decided in the trial court, and that

defendants will have the opportunity to raise that issue on remand.

For purposes of the issue before us, however, we conclude that the potential availability of governmental immunity does not warrant reading into section 13–17.5–102.3(1) a requirement that inmates exhaust administrative remedies before bringing a common law tort action against the facility in which they are confined and against its employees.

First, there is no reference whatever in the legislative history of section 13–17.5–102.3(1) to governmental immunity as a potential bar to inmates' common law claims. Second, even if the General Assembly had assumed that governmental immunity would bar claims against DOC, there is nothing to indicate that it would have made a similar assumption regarding tort claims asserted against a private prison housing inmates pursuant to a contract with DOC. Third, the CGIA would not bar claims against correctional facility employees whose conduct was willful and wanton, as is alleged in this case. *See* § 24–10–118(2)(a), C.R.S.2007; *Nieto*, 993 P.2d at 506–07; *Carothers v. Archuleta County Sheriff*, 159 P.3d 647, 652 (Colo.App. 2006); *see also Davis*, 21 P.3d at 873.

### 3.

Nor are we persuaded by defendants' argument that giving effect to the plain language of section 13–17.5–102.3(1) would defeat the General Assembly's intent in enacting the statute.

Section 13–17.5–101, C.R.S.2007, states:

(1) The general assembly declares that the state has a strong interest in limiting substantially frivolous, groundless, or vexatious inmate lawsuits that impose an undue burden on the state judicial system. While recognizing an inmate's right to access the courts for relief from unlawful state actions, the general assembly finds that a significant number of inmates file substantially frivolous, groundless, or vexatious lawsuits.

(2) The general assembly, therefore, determines that it is necessary to enact legislation that promotes efficiency in the disposition of inmate lawsuits by providing for

preliminary matters to be determined by magistrates and to provide for sanctions against inmates who are allowed to file claims against public defendants and whose claims are dismissed as frivolous.

While these provisions reflect the General Assembly's intent to limit frivolous, groundless, or vexatious inmate lawsuits, the legislative history of section 13–17.5–102.3(1) shows that the General Assembly carefully considered and delineated the extent to which inmate lawsuits would be limited.

For example, section 13–17.5–102.3(1) as originally drafted would have precluded inmates from bringing a civil action "based upon prison conditions under any *state* statute or constitutional provision" without exhausting administrative remedies (emphasis added). However, the General Assembly deleted the word "state" because it recognized that many inmate lawsuits were based on federal statutes as well as state statutes. *See* Hearings on H.B. 1079 before the House Jud. Comm., 61st Gen. Assemb., 2d Sess. (Jan. 20, 1998). In 2001, an amendment to section 13–17.5–102.3(1) was proposed that would have removed the phrase "based upon prison conditions under any statute or constitutional provision." The amendment was not adopted. *See* Hearings on H.B. 1226 before the Senate Jud. Comm., 63d Gen. Assemb., 1st Sess. (Mar. 7 & 12, 2001); Senate Journal 539, 63d Gen. Assemb., 1st Sess. (Mar. 14, 2001) (reinserting language that amendment proposed to delete).

■ More important, as discussed below, plaintiffs would have been able to assert their claims at common law without first exhausting administrative remedies. Our supreme court has repeatedly directed courts to use particular care in interpreting a statute to abrogate the common law when the statute does not expressly do so. *See Robbins v. People,* 107 P.3d 384, 387–90 (Colo.2005) ("[the] plain meaning rule informs our principle that a statute may not be construed to abrogate the common law unless such abrogation was clearly the intent of the general assembly"; court would therefore not read § 16–5–402, C.R.S.2007, as abrogating the doctrine of laches as a bar to postconviction relief in class one felony cases); *Beach v.*

*Beach,* 74 P.3d 1, 4 (Colo.2003) ("[a] statute is not presumed to alter the common law except to the extent that such statute expressly provides"; thus, because statute was silent on the issue, court would not presume that General Assembly intended to abrogate common law rule applicable to partition actions); *Farmers Group, Inc. v. Williams,* 805 P.2d 419, 423 (Colo.1991) (court "will not lightly infer a legislative abrogation of that [common law] right absent a *clear* expression of intent" (emphasis in original) ).

Because section 13–17.5–102.3(1) does not by its plain language evidence a legislative intent to abrogate plaintiffs' common law right to assert their claims without exhaustion of administrative remedies, we may not read the statute to do so. While that principle might potentially be deemed inapplicable if giving effect to the statute as written would produce an absurd result, *see Kauntz v. HCA–Healthone, LLC,* 174 P.3d 813, 816 (Colo.App.2007), we do not view this as such a case. *See also Department of Transportation v. City of Idaho Springs,* —— P.3d ——, ——, 2008 WL 1902497 (Colo.App. No. 07CA0274, May 1, 2008) (rejecting argument that court should interpret statute contrary to its plain language, and observing: "Every legislature must grapple with the problem of unintended consequences. If a statute gives rise to undesirable results, the legislature must determine the remedy. Courts may not rewrite statutes to improve them." (citation omitted) ).

In sum, we conclude that section 13–17.5–102.3(1) does not apply to common law tort claims, and that the trial court erred in construing it to the contrary.

## C.

■ We are similarly unpersuaded by defendants' contention that we may uphold the trial court's ruling on other grounds because, "even if the statute did not require plaintiffs to exhaust their remedies, the common law did."

[6] At common law, parties seeking relief in the courts are generally required to exhaust available administrative remedies before they may do so. *See Horrell v. Depart-*

*ment of Administration,* 861 P.2d 1194, 1197 (Colo.1993); *Glover v. State,* 129 P.3d at 1084. However, that rule is subject to exceptions. For example, parties are not required to exhaust administrative remedies when such remedies are "ill-suited for providing the relief sought," when the matters in controversy "consist of questions of law rather than issues committed to administrative discretion and expertise," and when the administrative agency does not have the authority to pass on the question raised. *Horrell,* 861 P.2d at 1197; *see Collopy v. Wildlife Commission,* 625 P.2d 994, 1006 (Colo.1981) (exhaustion not required where disposition of plaintiff's claim depended in part on resolution of certain questions of law and where asserted administrative remedy afforded "no retrospective, compensatory relief for accrued, excessive crop damages attacked as an uncompensated taking"); *Pfenninger v. Exempla, Inc.,* 17 P.3d 841, 843–44 (Colo.App. 2000) (plaintiffs were not required to exhaust administrative remedies before filing defamation claim because administrative body was unable to award compensatory damages for common law claims); *Patel v. Thomas,* 793 P.2d 632, 636 (Colo.App.1990) (exhaustion not required as prerequisite to filing common law tort claims, where state personnel board lacked power to provide an appropriate remedy for plaintiff's damages), *overruled on other grounds by Gallagher v. Board of Trustees,* 54 P.3d 386, 393 (Colo.2002).

Here, the administrative remedy that plaintiffs would assertedly have been required to exhaust is that provided under DOC Admin. Reg. No. 850–04, which sets forth a grievance procedure for resolving inmate complaints. However, while the regulation states that it may afford remedies such as modification of the institutional policy, restoration of or restitution for property, or assurance that abuse will not recur, it further provides: "DOC employee, contract worker, or volunteer discipline/reprimand, damages for pain and suffering, and exemplary or punitive damages are not remedies available to offenders." DOC Admin. Reg. No. 850–04(III)(I).

Thus, because the administrative remedies available under DOC Admin. Reg. No. 850–04 would not include the relief sought by plaintiffs in this lawsuit, plaintiffs would not have been required at common law to exhaust those remedies.

■ The common law exceptions to the exhaustion doctrine have been limited or eliminated in prison litigation when a statute evidences a legislative intent to do so. *See Booth v. Churner,* 532 U.S. 731, 739–40, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001) (enactment of Prison Litigation Reform Act of 1995 (PLRA), 42 U.S.C. § 1997e(a), requiring exhaustion of remedies before bringing action regarding prison conditions under "any ... Federal law," "eliminated both the discretion to dispense with administrative exhaustion and the condition that the remedy be 'plain, speedy, and effective' before exhaustion could be required"); *see also Porter v. Nussle,* 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) (PLRA broadens prior exhaustion requirement to encompass all actions brought with respect to prison conditions under any federal law); *Glover,* 129 P.3d at 1085–86 (relying on *Booth* in concluding that § 13–17.5–102.3 evidenced an intent to require that inmate exhaust grievance process under DOC Admin. Reg. No. 850–04 even though grievance process could not afford him all the relief he sought).

In contrast to the broadly worded PLRA, section 13–17.5–102.3(1) does not apply to common law tort claims. Accordingly, those claims would remain subject to the common law rule, which would not have required exhaustion of administrative remedies in this case because the available remedy was "ill-suited for providing the relief sought." *Horrell,* 861 P.2d at 1197. Thus, the trial court's ruling cannot be affirmed on this alternative basis.

## II.

■ In its order, the trial court also ruled that plaintiffs' claim for punitive damages had to be "dismissed at this time" because it was premature under section 13–21–102(1.5)(a), C.R.S.2007. That statute provides that a claim for exemplary damages may not be included in any initial claim for relief, but may be added by amendment after the exchange of initial C.R.C.P. 26 disclo-

sures and the establishment by the plaintiff of "prima facie proof of a triable issue" as to exemplary damages. Plaintiffs concede, and we agree, that their request for punitive damages was premature in light of section 13–21–102(1.5)(a), and that it should be dismissed without prejudice. Therefore, we affirm this portion of the trial court's order.

██ However, we do not agree with defendants that plaintiffs are barred from subsequently seeking punitive damages for the reason that such damages are available only pursuant to statute and thus fall within the exhaustion requirement of section 13–17.5–102.3(1).

Although section 13–17.5–102.3(1) requires exhaustion prior to bringing "a civil action based upon prison conditions under any statute or constitutional provision," plaintiffs could not bring a "civil action," as that term is defined in section 13–17.5–102(1), C.R.S. 2007, for punitive damages alone. *See Ress v. Rediess,* 130 Colo. 572, 579, 278 P.2d 183, 187 (1954); *see also Palmer v. A.H. Robins Co.,* 684 P.2d 187, 213 (Colo.1984) ("A claim for punitive damages . . . is not a separate and distinct cause of action. Rather, it is auxiliary to an underlying claim for actual damages." (citations omitted) ).

Plaintiffs' civil action here seeks to vindicate rights based in the common law. Section 13–17.5–102.3(1) neither precludes plaintiffs from bringing such an action nor bars them from subsequently renewing their request for punitive damages if the prerequisites for such a request are met.

### III.

Defendants also argued in the trial court that the assault and battery claims of some of the plaintiffs should be dismissed for failure to state a claim, because those plaintiffs failed to allege that any defendant used physical force against them. Although the trial court did not address this argument, defendants contend on appeal that we should uphold, on this alternative basis, the judgment of dismissal of the assault and battery claim as to those plaintiffs who did not allege that defendants touched them. We disagree.

██ A motion to dismiss for failure to state a claim under C.R.C.P. 12(b)(5) is properly granted when the plaintiff's factual allegations cannot support a claim as a matter of law. *BRW, Inc. v. Dufficy & Sons, Inc.,* 99 P.3d 66, 71 (Colo.2004). However, such motions are viewed with disfavor and are rarely granted under our notice pleadings. *Grizzell v. Hartman Enterprises, Inc.,* 68 P.3d 551, 553 (Colo.App.2003).

██ A complaint need not express all facts that support the claim, but need only serve notice of the claim asserted. In addition, the allegations of the complaint must be viewed in the light most favorable to the plaintiff. *Id.*

██ To establish assault, the following elements must be proved: (1) the defendant acted either with the intent of making a contact with the person of the plaintiff or with the intent of putting the plaintiff in apprehension of such a contact; (2) the plaintiff was placed in apprehension of an imminent contact with his or her person by the conduct of the defendant; and (3) such contact was or appeared to be harmful or offensive. The elements of battery are similar, except that the contact must have actually resulted. *Bohrer v. DeHart,* 943 P.2d 1220, 1224 (Colo.App.1996); *see also White v. Muniz,* 999 P.2d 814, 816 (Colo.2000) (an actor is subject to liability to another for battery if he or she acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and an offensive or harmful contact with the person of the other directly or indirectly results).

██ Plaintiffs alleged in their amended complaint that the conduct described in paragraphs 21 through 27 of the complaint constituted an assault and battery on them. Paragraphs 21 through 27 alleged, as pertinent here, that plaintiffs were ordered to lie face down on the ground and "were handcuffed at the wrists by plastic ratcheted tie cuffs that were pulled so tight that the cuffs cut into the skin and caused inmates' hands to become numb"; that if an inmate complained of pain, the cuffs would be ratcheted tighter; that inmates in flooded cells were dragged

from their cells by their ankles through water contaminated with feces, blood, and broken glass; and that "[a]ll of the Plaintiffs" were handcuffed and treated as above-described.

Although other paragraphs of the amended complaint described specific injuries suffered by individual plaintiffs—for example, being shot with pellets or rubber bullets while trying to leave their burning units—the allegations set forth above were sufficient to state a claim for assault and battery as to all the plaintiffs. Thus, this claim was not subject to dismissal under C.R.C.P. 12(b)(5).

The judgment is affirmed to the extent it dismisses plaintiffs' punitive damages claim as premature. The judgment is otherwise reversed, and the case is remanded for further proceedings consistent with the views set forth here.

Judge GRAHAM and Judge KAPELKE *, concur.