The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
November 2, 2023

## 2023COA103

**No. 22CA1246, *Rudnicki v. Bianco* — Professional Liability — Medical Malpractice — Pre-Majority Medical Expenses; Remedies — Interest on Damages — Prejudgment Interest; Health and Welfare — Health Care Availability Act — Limitation of Liability**

In this medical malpractice action, a division of the court of appeals rejects the defendant doctor's contention that the district court should have computed prefiling, prejudgment interest on the jury's award of pre-majority medical expenses to the minor plaintiff from the date the Colorado Supreme Court decided *Rudnicki v. Bianco*, 2021 CO 80, which abolished the common law rule precluding minors from recovering that category of damages. The division concludes that *Rudnicki* did not alter the date from which prefiling, prejudgment interest is calculated under section 13-21-101(1), C.R.S. 2023. Thus, the division concludes that the plaintiff

was entitled to prefiling, prejudgment interest on his pre-majority medical expenses from the date his cause of action accrued.

The division also rejects the doctor's contention that the district court erred by awarding prefiling, prejudgment interest in an amount that would make the total award exceed the $1 million damages limitation under the Health Care Availability Act (HCAA), section 13-64-302(1)(b), C.R.S. 2023.  Generally following the rationale of *Scholle v. Ehrichs*, 2022 COA 87M, ¶ 107 (*cert. granted* Apr. 10, 2023), the division concludes that prefiling, prejudgment interest on past and future economic damages may exceed the $1 million cap in the HCAA, provided the other statutory requirements for exceeding the cap are met.

COLORADO COURT OF APPEALS                                    **2023COA103**

Court of Appeals No. 22CA1246
El Paso County District Court No. 14CV34013
Honorable David A. Gilbert, Judge

Alexander Rudnicki; and Francis Rudnicki as parents, guardians, and next friends; and Pamela Rudnicki, as parents, guardians, and next friends,

Plaintiffs-Appellees,

v.

Peter Bianco, D.O.,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE BROWN
Tow and Schock, JJ., concur

Announced November 2, 2023

Wahlberg, Woodruff, Nimmo & Sloane LLP, David S. Woodruff, Megan K. Matthews, Denver, Colorado, for Plaintiffs-Appellees

Lewis Roca Rothgerber Christie LLP, Kendra N. Beckwith, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Peter Bianco, D.O., appeals the district court's entry of judgment on the jury's award of damages for pre-majority medical expenses to plaintiff, Alexander Rudnicki.[1]  Dr. Bianco contends that the court erred by awarding prefiling, prejudgment interest on those damages (1) from the date Alexander was born (the date of injury) rather than the date the Colorado Supreme Court determined he was entitled to recover such expenses in *Rudnicki v. Bianco*, 2021 CO 80; and (2) resulting in a total award in excess of the $1 million damages limitation under the Health Care Availability Act (HCAA), section 13-64-302(1)(b), C.R.S. 2023.

¶ 2     Resolving Dr. Bianco's first contention requires us to determine the impact of *Rudnicki*, if any, on the date from which prefiling, prejudgment interest on an award of pre-majority medical expenses should be calculated.  Dr. Bianco contends that because Alexander was not entitled to recover his pre-majority medical expenses as a measure of damages until *Rudnicki* abolished the

---

[1] We refer to Alexander by his first name because that is how the supreme court referred to him in *Rudnicki v. Bianco*, 2021 CO 80. We intend no disrespect by doing so.  Alexander's parents, Francis and Pamela Rudnicki were originally individual plaintiffs as well but as discussed below, *infra* Part I, their individual claims were dismissed.

common law rule precluding such recovery, interest should accrue from the date of the supreme court's ruling rather than from the date of Alexander's birth. Based on the plain language of sections 13-21-101(1) and 13-80-108(1), C.R.S. 2023, we conclude that Alexander is entitled to collect prefiling, prejudgment interest on his pre-majority medical expenses from the date his cause of action accrued, which was the date of his birth.

¶ 3     Resolving Dr. Bianco's second contention requires that we consider whether prefiling, prejudgment interest on economic damages may be awarded in an amount that would make the total award exceed the $1 million damages limitation under the HCAA. We generally agree with the rationale of *Scholle v. Ehrichs*, 2022 COA 87M, ¶ 107 (*cert. granted on other grounds* Apr. 10, 2023), which held that "prefiling, prejudgment interest is part of 'damages' capped under the HCAA, subject to being uncapped upon a showing of good cause and unfairness." *See* § 13-64-302(1)(b). Prefiling, prejudgment interest on Alexander's pre-majority medical expenses is a part of his past and future economic damages. And the district court found the requisite good cause and unfairness to award past and future economic damages exceeding the HCAA

damages limitation.  Thus, we conclude that Alexander is entitled to prefiling, prejudgment interest on his pre-majority medical expenses from the date of his birth, without limitation.

I.    Background and Procedural History

¶ 4    On October 5, 2005, Alexander was severely injured when Dr. Bianco negligently performed an operative vaginal delivery using a vacuum extractor to assist in his birth.  Alexander suffered scalp abrasions and bruising on his skull and required immediate, intensive medical treatment.  As a result of his injuries, Alexander has required and will require ongoing physical, occupational, and speech therapy.  Alexander has intellectual disabilities and is enrolled in special education.  He is unlikely to be able to live independently in the future.  *See Rudnicki*, ¶ 4.

¶ 5    In 2014, Francis and Pamela Rudnicki, in their individual capacities and as parents, guardians, and next friends of Alexander, sued Dr. Bianco for medical malpractice.  The parents' individual claims against Dr. Bianco were dismissed as time barred, and the case proceeded to a jury trial with Alexander as the sole plaintiff.  *See id.* at ¶ 5; *see also* § 13-80-102.5(1), (3)(d)(II), C.R.S. 2023.

¶ 6     After a two-week trial, a jury found that Dr. Bianco had acted negligently, causing Alexander injuries, and awarded Alexander a total of $4 million in damages, including more than $3.6 million in past and future economic damages.  As relevant to this appeal, those economic damages included $391,000 for past medical expenses Alexander had already incurred and future medical expenses he would probably incur from the date of judgment until he reached age eighteen (pre-majority medical expenses).[2]  *See Rudnicki*, ¶ 5.

¶ 7     Arguing that the common law only allowed Alexander's parents, not Alexander himself, to recover pre-majority medical expenses, *see Pressey v. Child.'s Hosp. Colo.*, 2017 COA 28, ¶ 26, and that the parents' claims were time barred, Dr. Bianco moved the district court to reduce Alexander's damages award by the

---

[2] The jury awarded Alexander $325,000 for past medical expenses and $110,000 for future medical expenses he would probably incur until he reaches age *twenty-two*.  Dr. Bianco did not challenge forty percent, or $44,000, of the $110,000 award, which is the proportion of future medical expenses Alexander would probably incur after age eighteen (his current age) but before he turns twenty-two.  Thus, this appeal relates only to prejudgment interest on pre-majority medical expenses Alexander would probably incur before he turned eighteen.

amount the jury attributed to his pre-majority medical expenses. Reasoning that it was bound by *Pressey*, the court reduced the damages award by $391,000.

¶ 8 Dr. Bianco also moved the court to reduce Alexander's total award to $1 million, citing the damages limitation in section 13-64-302(1)(b) of the HCAA. But the court found that there was good cause to exceed the damages cap. It reasoned that applying the cap in this case would be "manifestly unfair" to Alexander given the substantial evidence presented at trial regarding his life-long need for "constant supervision" and "considerable assistance with performing the basic tasks of living that most of us take for granted," and his inability to contribute in any meaningful way to the costs of such care. The court concluded that the jury's findings were the proper measure of the fair, reasonable, and necessary damages Alexander incurred and declined to further reduce the award.

¶ 9 Finally, Dr. Bianco moved the court to apply the HCAA damages cap to limit Alexander's recovery of prejudgment interest for the period beginning on the date the action accrued and ending on the date the complaint was filed (prefiling, prejudgment interest),

citing section 13-64-302(2). Because Alexander's damages award exceeded the $1 million cap, Dr. Bianco argued that no prefiling, prejudgment interest should be awarded.

¶ 10     The court did not initially resolve whether prefiling, prejudgment interest was subject to the $1 million cap and instead ordered Alexander's counsel to file a proposed order "to include prejudgment and post-judgment interest" based on the modified award of damages. Alexander's counsel submitted two proposed orders, one that capped prefiling, prejudgment interest and one that did not. Ultimately, the court entered judgment in favor of Alexander in the amount of $4,633,174.59, consisting of $3,554,000 in damages plus $1,079,174.59 in prejudgment interest calculated from the date the suit was filed to the date of judgment (post-filing, prejudgment interest). The court explained that its prior "reference to prejudgment interest was meant to include interest from the date of the filing of the complaint and not pre-filing interest."

¶ 11     Alexander appealed the district court's decision to reduce the judgment by the amount of pre-majority medical expenses. *See Rudnicki v. Bianco*, (Colo. App. No. 18CA0215, June 6, 2019) (not

6

published pursuant to C.A.R. 35e)).  A division of this court affirmed, concluding that Alexander was not entitled to recover pre-majority medical expenses under the then-existing common law rule.  *See id.*

¶ 12     Alexander then petitioned for certiorari review by the Colorado Supreme Court.  *See Rudnicki*, ¶ 10.  The supreme court granted certiorari, in relevant part, to decide whether to adhere to the common law rule under which only a minor plaintiff's parents may recover tort damages for medical expenses incurred by their unemancipated minor child.  *See id.* at ¶ 1 n.1.  The supreme court reasoned that the traditional rationales for the common law rule no longer apply and that the realities of the modern health care economy compelled it to abandon the common law rule and to conclude that either the unemancipated minor child or their parents may recover the child's pre-majority medical expenses, although double recovery is not permitted.  *See id.* at ¶ 2.  The supreme court reversed the decision of the division, overruled *Pressey*, and remanded for further proceedings.  *Id.* at ¶¶ 44, 49.

¶ 13     On remand, the parties agreed that, following *Rudnicki*, judgment should be entered in Alexander's favor for $391,000 in

damages for pre-majority medical expenses. But they disputed when prejudgment interest began to accrue and how much prejudgment interest could be awarded.

¶ 14 Alexander requested $319,120.27 in prefiling, prejudgment interest, calculated from the date the action accrued — October 5, 2005 — until the date the complaint was filed, and another $647,233.30 in post-filing, prejudgment interest, calculated from the date the complaint was filed — October 31, 2014 — until the date the judgment entered. Dr. Bianco argued that Alexander was only entitled to prejudgment interest from the date the supreme court issued *Rudnicki* — December 13, 2021 — for a total of $15,876.89. Alternatively, Dr. Bianco argued that Alexander was not entitled to recover any prefiling, prejudgment interest because he had already been awarded "the maximum total amount allowable" under the HCAA damages limitation. But Dr. Bianco agreed that Alexander could recover post-filing, prejudgment interest from the date the complaint was filed until the date the judgment was entered, for a total of $360,636.28.

¶ 15 The district court adopted Alexander's proposed form of judgment, which included prefiling, prejudgment interest calculated

8

from the date Alexander was born, as well as post-filing, prejudgment interest calculated from the date the complaint was filed. The court further ordered that its prior decision that Alexander's damages could exceed the $1 million cap under the HCAA "still applie[d]," so the cap did not limit the amount that could be recovered as prejudgment interest.

## II.    Analysis

¶ 16    The only issue remaining for us to decide on appeal is whether the district court erred by including in its final judgment prefiling, prejudgment interest on Alexander's pre-majority medical expenses, calculated from his date of birth. We first determine the date from which the prefiling, prejudgment interest should be calculated under section 13-21-101(1). We then determine whether such interest should be limited by section 13-64-302(1)(b).

### A.    Standard of Review

¶ 17    Dr. Bianco's contentions require that we interpret and apply several Colorado statutes, which we do de novo. *See McCulley v. People*, 2020 CO 40, ¶ 10. In construing a statute, we aim to effectuate the legislature's intent by giving the language its plain and ordinary meaning. *See id.* "We must interpret the statute as a

9

whole and in the context of the entire statutory scheme, giving consistent, harmonious, and sensible effect to all its parts." *Id.*

¶ 18 If the plain language is clear and unambiguous, we apply the statute as written and look no further. *See Nieto v. Clark's Mkt., Inc.*, 2021 CO 48, ¶ 12. However, if a statute is ambiguous — "that is, reasonably susceptible [of] more than one interpretation" — we turn to other interpretive aids to discern the legislature's intent. *Id.* at ¶ 13. These aids include legislative history, the end to be achieved by the statute, and the consequences of a given construction. § 2-4-203, C.R.S. 2023; *see Morris v. Goodwin*, 185 P.3d 777, 779 (Colo. 2008).

### B. Prefiling, Prejudgment Interest May Be Recovered from the Date the Cause of Action Accrued

¶ 19 Dr. Bianco contends that the district court erred by awarding prefiling, prejudgment interest from Alexander's date of birth because he was not legally entitled to those damages until the supreme court's decision in *Rudnicki*. Based on the plain language of the governing statutes, we disagree.

¶ 20 Prejudgment interest on damages awarded in a personal injury action is specifically authorized by section 13-21-101(1). *Seaward*

*Constr. Co. v. Bradley*, 817 P.2d 971, 973 (Colo. 1991). Under that statute, a plaintiff may recover prejudgment interest on damages "from the date the action accrued" until the day before the complaint was filed — prefiling, prejudgment interest — and from the date the complaint was filed to the date judgment entered — post-filing, prejudgment interest. § 13-21-101(1); *Ochoa v. Vered*, 212 P.3d 963, 970 (Colo. App. 2009).

¶ 21     The legislature has defined when a personal injury action accrues in section 13-80-108(1): "[A] cause of action for injury to [a] person . . . shall be considered to accrue on the date both the injury and its cause are known or should have been known by the exercise of reasonable diligence." *See Jones v. Cox*, 828 P.2d 218, 223 (Colo. 1992) ("We hold that a cause of action accrues on the date that both the physical injury and its cause were known or should have been known by the exercise of reasonable diligence."); *see also* § 13-80-102.5(1).

¶ 22     Based on the plain language of the applicable statutes, which are clear and unambiguous on this point, Alexander may recover prejudgment interest on his damages from the date his injury and its cause were known or should have been known by the exercise of

11

reasonable diligence. *See* §§ 13-21-101(1), 13-80-102.5(1), 13-80-108(1). It is undisputed that Alexander's injury and its cause were known on the date of his birth, October 5, 2005. Alexander's action against Dr. Bianco accrued on that date, and he is entitled to prefiling, prejudgment interest from that date to the day before his complaint was filed. *See* § 13-21-101(1); *Ochoa*, 212 P.3d at 970.

¶ 23    Despite the statutes' plain language, Dr. Bianco contends that "Colorado law has not addressed at what point prejudgment interest begins to accrue when the law changes to allow a plaintiff to recover a new category of damages *after* the plaintiff's cause of action accrues." Dr. Bianco essentially asks us to hold that a cause of action accrues for purposes of computing interest under section 13-21-101(1) when the plaintiff becomes legally entitled to a particular category of damages. Because Alexander became legally entitled to recover pre-majority medical expenses when the supreme court decided *Rudnicki,* Dr. Bianco argues that the date of the decision should be the date from which interest on that category of damages is calculated. He argues that section 13-21-101 is "silent" as to when prejudgment interest may be recovered under these circumstances and encourages us to look to the legislature's intent

12

in authorizing prejudgment interest to determine the statute's meaning. For four reasons, we are not persuaded.

¶ 24 First, the date a personal injury action accrues does not depend on when the plaintiff incurs a specific category or amount of damages. The word "injury" in section 13-80-108(1) means "physical injury," not "injury upon which a claimant can sustain a cause of action." *Jones*, 828 P.2d at 223; *see also Brodeur v. Am. Home Assurance Co.*, 169 P.3d 139, 147 n.8 (Colo. 2007) ("We note that an injury is different from the damages that flow from the injury."). If the plaintiff is able to "ascertain whether she has sustained *any* damage," the "fact of injury" is known for purposes of accrual. *Dove v. Delgado*, 808 P.2d 1270, 1273-74 (Colo. 1991). "Pursuant to the language of section 13-80-108(1), damages do not need to be known before accrual of a claim." *Brodeur*, 169 P.3d at 147 n.8; *see also Taylor v. Goldsmith*, 870 P.2d 1264, 1266 (Colo. App. 1994) (a plaintiff's claim accrues "on the date the fact of injury and its cause are known or should have been known"; the "plaintiff's uncertainty as to the full extent of the damages does not prevent the filing of a timely complaint").

¶ 25　　Second, although *Rudnicki* held that a minor child is entitled to recover a new category of damages, it did not create a new cause of action. *Rudnicki,* ¶ 46. The supreme court emphasized that its decision answered "the narrow question of who may seek *a specific remedy* when an unemancipated minor is injured. *It does not create a new class of claims for the court to adjudicate. Nor does it impose new duties or obligations on the parties.*" *Id.* (emphasis added). Section 13-21-101 is plainly concerned with the date the "action" accrued. Because *Rudnicki* did not create a new "action," it does not impact the date from which prejudgment interest is calculated under that statute.

¶ 26　　We are not persuaded otherwise by the out-of-state cases Dr. Bianco cites because they are distinguishable either based on the unique language of the applicable interest statute or because the change in the law created a new right to maintain an action rather than a new right to seek a specific remedy. *See Diaz v. State,* 2016 MT 270, ¶ 12 (the applicable statute provided that prejudgment interest was recoverable from the day that the "right to recover . . . is vested in the person" (quoting Mont. Code Ann. § 27-1-211 (West 2023))); *Cardi Corp. v. State,* 561 A.2d 384, 385-88 (R.I. 1989) (the

14

applicable statute calculated interest from "the date the cause of action accrued," but the court concluded that the plaintiff's claim did not accrue until the legislature passed an act that waived sovereign immunity, which first gave the plaintiff the "right to sue the state").

¶ 27     Third, we are not persuaded by the distinction Dr. Bianco draws between the accrual of a cause of action and the entitlement to a specific category of damages.  Dr. Bianco contends that prefiling, prejudgment interest on Alexander's pre-majority medical expenses "cannot logically compensate [Alexander] for the loss of such damages during a period in which he was not entitled to recover them."  True, as Dr. Bianco points out, a plaintiff is only entitled to interest on damages to which they are legally entitled. *See Morris*, 185 P.3d at 780 (the plaintiff was not entitled to interest on damages awarded by the jury that exceeded defendant's proportion of comparative fault or that exceeded the HCAA's cap on noneconomic damages); *see also Allstate Ins. Co. v. Starke*, 797 P.2d 14, 19 (Colo. 1990) (Prejudgment interest "represents a legislatively prescribed award for any delay in plaintiff's receipt of money to which he has been found legally entitled." (quoting *Houser v.*

*Eckhardt*, 35 Colo. App. 155, 160-61, 532 P.2d 54, 57 (1974))). But that unremarkable tenet says nothing about the date from which such interest should be calculated once the plaintiff becomes legally entitled to damages. Section 13-21-101(1) does. Even though Alexander did not become "legally entitled" to pre-majority medical expenses until the supreme court decided *Rudnicki*, now that he is legally entitled to those damages, section 13-21-101(1) allows him to claim interest "from the date the *action* accrued." (Emphasis added.) We are not at liberty to rewrite the statute. *See Yen, LLC v. Jefferson Cnty. Bd. of Comm'rs*, 2021 COA 107, ¶ 32.

¶ 28    We acknowledge that the supreme court has determined that prejudgment interest cannot be awarded on punitive damages in part because the "right to punitive damages does not exist until such damages are awarded by a trier of fact." *Seaward Constr. Co.*, 817 P.2d at 976. But a complete reading of *Seaward Construction* reveals that its result was driven by the different purposes for awards of punitive damages and awards of compensatory damages and prejudgment interest.

¶ 29    The supreme court reasoned that punitive damages "are a distinct form of damages awarded for a particular purpose" — "not

as compensation to the injured party for the wrong done, but as a punishment of the wrongdoer as an example to others." *Id.* at 973-74 (quoting *Ark Valley Alfalfa Mills, Inc. v. Day*, 128 Colo. 436, 440, 263 P.2d 815, 817 (1953)). By comparison, compensatory damages "are awarded to cover loss caused by the negligence of another and are intended to make the injured party whole." *Id.* at 975.

¶ 30    To that end, "[t]he addition of prejudgment interest to a judgment for compensatory damages recognizes that the loss caused by the tortious conduct occurred at the time of the resulting injury but that the damages paid to compensate for that loss are not received by the injured party until later." *Id.* Such interest is "a component of damages rather than interest as such" and is meant to compensate the plaintiff for "the time value of the award eventually obtained against the tortfeasor." *Id.* at 976 (quoting *Starke*, 797 P.2d at 19); *see also Old Republic Ins. Co. v. Ross*, 180 P.3d 427, 437 (Colo. 2008).

¶ 31    "The same cannot be said of prejudgment interest on punitive damages," which "do not compensate for loss resulting from the injury" and to which the injured party has "no entitlement of any kind . . . unless and until awarded by the trier of fact." *Seaward*

17

*Constr. Co.*, 817 P.2d at 975. Prejudgment interest on punitive damages "would serve merely as an additional penalty and is not necessary to make the injured party whole." *Id.* at 976. Thus, allowing prejudgment interest on punitive damages "would be inconsistent with the compensatory purpose of section 13-21-101." *Id.* The supreme court concluded that prejudgment interest is not authorized on an award of punitive damages. *Id.* at 979.

¶ 32 Because the prefiling, prejudgment interest at issue in this case is a component of compensatory damages intended to make Alexander whole for a loss he suffered at birth — even though he did not become legally entitled to that category of damages until *Rudnicki* — an award of such interest is consistent with the compensatory purpose of section 13-21-101.

¶ 33 Fourth, we disagree with Dr. Bianco that our interpretation is contrary to legislative intent. As just discussed, awarding prefiling, prejudgment interest from Alexander's date of birth furthers the compensatory purpose of the statute. But Dr. Bianco argues that awarding nearly seventeen years of prejudgment interest has "the punitive effect of dramatically increasing [Dr. Bianco's] liability without serving the intended purpose of such interest." He further

18

asserts that such an award is unfair because it punishes him "solely because the supreme court determined that changing circumstances wholly beyond [his] control justified changing the law on which [he] relied."[3] In essence, Dr. Bianco argues that our plain language interpretation leads to an absurd result.

¶ 34 Although we must avoid interpretations that lead to absurd results, we may only disregard the plain language of a statute "when the resultant absurdity is 'so gross as to shock the general moral or common sense.'" *Dep't of Transp. v. City of Idaho Springs*, 192 P.3d 490, 494 (Colo. App. 2008) (quoting *Crooks v. Harrelson*, 282 U.S. 55, 60 (1930)). Short of that, it is the legislature's responsibility to address unintended consequences and undesirable results. *Id.*

---

[3] Dr. Bianco asserts that awarding prefiling, prejudgment interest in this case does not serve to deter a defendant from wrongfully withholding payment. This argument appears to relate to section 5-12-102, C.R.S. 2023, rather than section 13-21-101, C.R.S. 2023. Although prejudgment interest under the former statute is calculated from "the date of wrongful withholding," § 5-12-102(1)(a), interest under the latter statute is calculated from "the date the action accrued," § 13-21-101(1). *See also Colwell v. Mentzer Invs., Inc.*, 973 P.2d 631, 641 (Colo. App. 1998).

¶ 35 Seventeen years of interest on medical expenses Alexander incurred because he was injured at birth seventeen years ago by Dr. Bianco's negligence does not shock the general moral or common sense. The result does not justify overriding the plain language of the statute. *See id.*; *Ryser v. Shelter Mut. Ins. Co.*, 2019 COA 88, ¶ 45 (policy considerations did not justify disregarding the plain language of the applicable statute).

¶ 36 Accordingly, we conclude that the district court did not err by awarding Alexander prefiling, prejudgment interest from the date his cause of action accrued, which was his date of birth.

### C. Interest in Excess of the HCAA Damages Limitation

¶ 37 Dr. Bianco contends that the district court erred by awarding prefiling, prejudgment interest resulting in a total award that exceeds the $1 million damages limitation in the HCAA. We conclude that the plain language of section 13-64-302 supports the award.

### 1. Prefiling, Prejudgment Interest on Economic Damages May Exceed the Damages Limitation in the HCAA

¶ 38    The HCAA limits the "total amount recoverable for all damages" in a medical malpractice action to "one million dollars." § 13-64-302(1)(b).  But there is an exception to the limitation:

> [I]f, upon good cause shown, the court determines that the present value of past and future economic damages would exceed such limitation and that the application of such limitation would be unfair, the court may award in excess of the limitation the present value of additional past and future economic damages only.

*Id.*  The HCAA also limits noneconomic damages to $300,000, without exception.  § 13-64-302(1)(b), (c).  Prefiling, prejudgment interest awarded pursuant to section 13-21-101 "is deemed to be a part of the damages awarded in the action for the purposes of this section and is included within each of the limitations on liability." § 13-64-302(2).

¶ 39    Thus, prefiling, prejudgment interest is an element of damages subject to the $1 million damages cap.  *See id.*; *see also Seaward Constr. Co.*, 817 P.2d at 976.  But if the court finds the requisite good cause and unfairness, can prefiling, prejudgment interest be awarded if doing so results in a total award beyond the cap?

¶ 40    A division of this court recently answered this question

affirmatively. *See Scholle*, ¶¶ 103-108. The *Scholle* division

reasoned that

> [d]amages are capped under the HCAA, subject
> to being uncapped upon a showing of "good
> cause" and "unfair[ness]." § 13-64-302(1)(b),
> (1)(c). Prefiling, prejudgment interest is part of
> damages. § 13-64-302(2). As a matter of pure
> logic, then, prefiling, prejudgment interest is
> part of "damages" capped under the HCAA,
> subject to being uncapped upon a showing of
> good cause and unfairness . . . .

*Id.* at ¶ 107.[4]

¶ 41    Dr. Bianco urges us not to follow *Scholle*, arguing that the

division's analysis is flawed. *See Chavez v. Chavez*, 2020 COA 70, ¶

13 (one division of the court of appeals is not bound by another).

Even if good cause and unfairness are found, *only* "past and future

economic damages" can exceed the cap, and Dr. Bianco contends

that prefiling, prejudgment interest is not part of "past and future

economic damages." We agree with the *Scholle* division's

---

[4] The Colorado Supreme Court declined to grant a cross-petition for
certiorari on the question whether prefiling, prejudgment interest
may be awarded in excess of the $1 million damages cap under the
HCAA. *See Scholle v. Ehrichs*, (Colo. No. 22SC639, Apr. 10, 2023)
(unpublished order).

22

conclusion, subject to one clarification.  Because only past and future economic damages may exceed the $1 million limitation, we conclude that only prefiling, prejudgment interest on past and future economic damages may exceed that limitation.

¶ 42    The plain language of the statute supports our conclusion. Section 13-64-302(2) provides that prefiling, prejudgment interest is "part of the damages awarded" and "is included within *each* of the limitations on liability" set forth in paragraph (1).  (Emphasis added.)  There are two such limitations on liability: a hard cap of $300,000 on "noneconomic loss or injury," which cannot be exceeded; and a soft cap of $1 million on "all damages," which can be exceeded by an award of "past and future economic damages" if the other requirements of the statute are met.  § 13-64-302(1)(b); *see also Ochoa*, 212 P.3d at 970.

¶ 43    This structure makes clear that the legislature did not view prefiling, prejudgment interest as a standalone category of damages.  Instead, it contemplated that prefiling, prejudgment interest on a particular category of damages *is part of the damages awarded for that category*.  Prefiling, prejudgment interest on noneconomic damages must be part of the noneconomic damages

23

awarded; otherwise, there would be no reason to specify that prefiling, prejudgment interest is subject to the noneconomic damages cap. *See Dupont v. Preston*, 9 P.3d 1193, 1199 (Colo. App. 2000) (reasoning under the former, lower economic damages limitation that a "plaintiff may not recover more than $250,000 in noneconomic loss, inclusive of prejudgment interest"), *aff'd on other grounds*, 35 P.3d 433 (Colo. 2001). If prefiling, prejudgment interest was itself a separate category of damages, it would be subject only to the $1 million cap on "all damages," and the legislature's reference to "each" limitation would be meaningless. *See People v. Iannicelli*, 2019 CO 80, ¶ 47 ("We cannot . . . interpret statutory language in such a way as to render any of the statute's terms meaningless.").

¶ 44     Following the same logic, prefiling, prejudgment interest on "past and future economic damages" is part of "past and future economic damages" and is awardable beyond the $1 million

limitation, provided the other requirements of the statute are met. § 13-64-302(1)(b); *see Scholle,* ¶ 107.[5]

¶ 45    We are not persuaded to reach a different result by the statute's legislative history.  Of course, because the statute is unambiguous, we need not look to other aids of statutory construction, such as legislative history.  *See Nieto,* ¶ 12.  We may nonetheless do so to assess Dr. Bianco's contentions and support our conclusion based on the plain language of the statute.  *See B.G.'s, Inc. v. Gross,* 23 P.3d 691, 696 (Colo. 2001) (considering legislative history to support plain language interpretation of a statute); *Adams v. Corr. Corp. of Am.,* 187 P.3d 1190, 1194 (Colo. App. 2008) (considering legislative history to assess the defendant's contentions).

¶ 46    The legislature adopted section 13-64-302 in response to *Scholz v. Metropolitan Pathologists, P.C.,* 851 P.2d 901, 911 (Colo.

---

[5] Prefiling, prejudgment interest on any category of damages that is neither "past and future economic damages" nor considered noneconomic losses for purposes of the HCAA's noneconomic loss limitation, *see Preston v. Dupont,* 35 P.3d 433, 441-42 (Colo. 2001) ("[N]oneconomic damages for physical impairment and disfigurement are not included in the definition of noneconomic loss contained in the HCAA's cap on such damages."), remains limited by the $1 million total damages cap without exception.

1993), which held that prejudgment interest was not included in the damages subject to the $1 million limitation under the HCAA. *See Dupont*, 9 P.3d at 1199. As a result, Dr. Bianco argues that allowing prefiling, prejudgment interest to exceed $1 million is contrary to the legislature's intent to include such interest within that limitation. But our interpretation does not run afoul of the legislature's intent to course correct after *Scholz*. Under our analysis, prefiling, prejudgment interest is subject to the $1 million damages limitation, consistent with the plain language of section 13-64-302(2). But the legislature also provided a mechanism to allow past and future economic damages — of which prefiling, prejudgment interest is a component — to exceed that limitation upon a showing of good cause and a finding of unfairness. *See* § 13-64-302(1)(b); *Scholle*, ¶ 107. It did not provide that prefiling, prejudgment interest may never exceed the cap. Had that been its intent, it would have said so explicitly. *See Ceja v. Lemire*, 154 P.3d 1064, 1067 (Colo. 2007); *People v. Denhartog*, 2019 COA 23, ¶ 20.

¶ 47     We are also not convinced to reach a different result by Dr. Bianco's reliance on *Wallbank v. Rothenberg*, where the trial court entered judgment on a jury verdict awarding over $1.3 million

26

without addressing whether good cause existed for exceeding the damages cap and without addressing prejudgment interest. 74 P.3d 413, 420 (Colo. App. 2003). The division determined that a remand was necessary for the court to make findings on both issues. *Id.* It explained that "[u]nder the one million dollar limitation, the Wallbanks may not recover additional amounts for prefiling interest." *Id.* at 420. Then, the division concluded that, "if the trial court finds good cause and unfairness justifying the award for lost future earnings, then prefiling interest also may not be awarded for that portion of the judgment that exceeds one million dollars, because prefiling interest is included in the total limit." *Id.*

¶ 48 How the *Wallbank* division reached its conclusion about prefiling, prejudgment interest is unclear to us. Based on the plain language of section 13-64-302(1)(b) and the jury's verdict, the trial court could not have found good cause to exceed the damages limitation. The division analyzed the 2002 version of the statute, which allowed the court to exceed the cap if the amount of "lost past earnings and the present value of lost future earnings" combined with the amount of past and future "medical and other health care costs" would exceed the limitation. § 13-64-302(1),

27

C.R.S. 2002; *compare* § 13-64-302(1), C.R.S. 2023 (allowing the court to exceed the cap for "past and future economic damages"). But the plaintiff was awarded only $166,060 in past and future lost earnings and medical expenses. A prerequisite for exceeding the cap was not met. The division also cited *Shannon v. Colorado School of Mines*, 847 P.2d 210, 213 (Colo. App. 1992), which held that prejudgment interest could not be awarded on future lost wages *under section 5-12-102*, C.R.S. 1992; it did not analyze section 13-21-101. Given these differences, we do not find *Wallbank* helpful. *See Chavez*, ¶ 13.

¶ 49    We are similarly unpersuaded by Dr. Bianco's citation to *Ochoa*, 212 P.3d at 970. There, the plaintiff received a noneconomic damage award that was "properly reduced to $250,000" under the then-existing noneconomic damages limitation in the HCAA. *Id.* The plaintiff acknowledged that she could not recover prefiling, prejudgment interest on her noneconomic damages because such interest was subject to and could not exceed the noneconomic damages cap. *Id.* But she sought to recover more post-filing, prejudgment interest by calculating such interest on the sum of the capped amount of damages plus the prefiling,

28

prejudgment interest that she otherwise would have been entitled to but for the noneconomic damages cap. *Id.* The division rejected the plaintiff's argument because calculating post-filing, prejudgment interest on prefiling, prejudgment interest in excess of the noneconomic damages limitation — prefiling, prejudgment interest the plaintiff was not entitled to recover under the statute — would be inconsistent with section 13-21-101. *Id.* at 970-71.

¶ 50 Notably, the HCAA does not provide a mechanism for the trial court to exceed the noneconomic damages limitation upon a showing of good cause and a finding of unfairness. *See* § 13-64-302(1)(b). Nor did *Ochoa* involve a question of whether prefiling, prejudgment interest was recoverable where the trial court made appropriate findings to exceed the total damages cap. *Ochoa* is likewise unhelpful. *See Chavez*, ¶ 13.

¶ 51 Finally, we are not swayed by Dr. Bianco's contention that our plain language interpretation goes against the policy purposes of the HCAA. In relevant part, the HCAA was enacted "to assure the continued availability of adequate health-care services . . . by containing the significantly increasing costs of malpractice insurance." § 13-64-102(1), C.R.S. 2023. Dr. Bianco contends that

awarding prefiling, prejudgment interest beyond the total damages limitation will significantly increase costs associated with practicing medicine in Colorado and result in "astronomical awards of prejudgment interest" that will ultimately result in a decline in quality medical care.

¶ 52    We recognize that adhering to the $1 million damage limitation furthers the legislature's stated policy reasons for enacting the HCAA. *See id.* Even so, the legislature expressly authorized courts to award past and future economic damages that exceed that limitation if there is a showing of good cause and a finding of unfairness. *See* § 13-64-302(1)(b). The legislature apparently recognized that the policy behind the HCAA should, under certain circumstances, yield to a plaintiff's right to be made whole. Balancing competing policy interests is a task for the legislature. *See Burnett v. State Dep't of Nat. Res.*, 2015 CO 19, ¶ 13. It is not our job to second-guess those policy judgments. *See Fontanari v. Colo. Mined Land Reclamation Bd.*, 2023 COA 15, ¶ 28.

¶ 53    Alexander's past and future economic damages, including his award of pre-majority medical expenses, exceeded $1 million. The district court found good cause to exceed the $1 million damages

30

limitation and determined that it would be "manifestly unfair" to apply the limitation in this case. Dr. Bianco does not challenge those findings on appeal. Prefiling, prejudgment interest is an element of Alexander's past and future economic damages. Thus, the court did not err by awarding prefiling, prejudgment interest on Alexander's pre-majority medical expenses, even though his total damages award exceeded $1 million.

### 2. The Law of the Case Does Not Alter Our Conclusion

¶ 54 Dr. Bianco contends that, even if prefiling, prejudgment interest on economic damages may exceed the HCAA damages limitation, the district court nonetheless erred by departing from its previous ruling declining to award Alexander any prefiling, prejudgment interest. Dr. Bianco contends that, under the "law of the case," the court was not free to modify that ruling unless it was "no longer sound because of changed conditions, factual errors in the previous ruling, intervening changes in the law, or manifest injustice resulting from the original ruling." *People v. Allen*, 885 P.2d 207, 212 (Colo. 1994).

¶ 55 But had the court ruled that Alexander was not entitled to prefiling, prejudgment interest on his award of pre-majority medical

31

expenses — whether based on "law of the case" or not — that ruling would have been erroneous, as we have explained. We are not bound by the "law of the case" to affirm a lower court's erroneous ruling. *See Sidman v. Sidman,* 2016 COA 44, ¶ 10 (explaining that "the law of the case from the district court [does] not bind us on appeal").

## III.    Disposition

¶ 56    The judgment is affirmed.

JUDGE TOW and JUDGE SCHOCK concur.